752 P.2d 22

**Jack E. ROUSE, Plaintiff–Appellant,**

v.

**SCOTTSDALE UNIFIED SCHOOL DISTRICT NO. 48, Defendant–Appellee.**

**No. 1 CA–CIV 9381.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 27, 1987.

Review Denied March 22, 1988.

Smith & Curtis by David W. Curtis, Phoenix, for plaintiff-appellant.

Jones, Skelton & Hochuli by Georgia A. Staton, Michael W. Foster, Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Judge.

This appeal raises the constitutional issue of whether a school board which initially issues a termination notice to a continuing teacher may, consistent with due process, determine whether "good cause" exists for that termination.

Jack Rouse was a special education teacher at Coronado High School in the Scottsdale School District. He was fired for "unprofessional conduct not involving students." Basically, this conduct stemmed from a series of incidents which occurred at the end of the school year in 1985 when Rouse refused to attend certain meetings or complete certain paperwork which was required by the school board.

Rouse requested a hearing before the school board pursuant to A.R.S. § 15–541. This hearing was held on July 31, 1985. At this hearing the school district was represented by counsel, Rouse was represented by counsel and John R. McDonald, Esq., was present as "special board counsel" to act as a mediator and advisor with regard to evidentiary and procedural matters. The school board voted to terminate.

Mr. Rouse appealed this decision to Superior Court, pursuant to A.R.S. § 15–543. The trial court affirmed the board's dismissal. It is from this decision that Rouse appeals. The following issues have been raised:

1. May this court consider the substantive issues in the case?

2. Did the hearing before the Scottsdale School Board violate Mr. Rouse's Fourteenth Amendment due process rights because the board of governors was responsible both for the original termination notice and the subsequent review hearing?

The school district contends that this court is precluded from reaching the substantive issue in this case because it was not argued before the board in the first instance, although it is conceded that the issue was raised in the trial court.

Rouse, in his reply brief, argues first, that this issue was addressed by the board in its "executive session"; second, that the board had no authority to rule on constitutional issues and therefore this issue did not have to be raised before them; and third, that where there are issues of "gen-

eral statewide significance," the courts may hear issues not earlier raised.

We agree that the general rule is that failure to raise an issue before an administrative tribunal precludes judicial review of that issue on appeal unless the issue is jurisdictional in nature. *DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 686 P.2d 1301 (App.1984); *Calixto v. Industrial Comm'n,* 126 Ariz. 400, 616 P.2d 75 (App.1980); *Stephens v. Industrial Comm'n,* 114 Ariz. 92, 559 P.2d 212 (App. 1977).

However, in each of the cases cited under the general rule, the petitioner attempted to raise a substantive issue which the administrative tribunal was competent to hear. *See DeGroot,* 141 Ariz. at 339, 686 P.2d at 1309 (appellee was not given opportunity to have independent laboratory test of incriminating evidence); *Calixto,* 126 Ariz. at 402, 616 P.2d at 77 (insurance carrier did not report termination of benefits to Industrial Commission); *Stephens* 114 Ariz. at 94, 559 P.2d at 214 (issue as to percentage of disability). Under these circumstances, the implication of waiver is appropriate.

In the present case, however, the question of whether the board, by virtue of its participation in the termination, may review the administrative hearing, goes to the issue of competency of the board itself. In this respect, it is more akin to a jurisdictional question. Moreover, the failure to raise the issue before the board does not deprive this court or the trial court of any essential facts necessary to resolve the issue.

We therefore hold that Rouse's failure to raise the issue in the earlier administrative hearing does not preclude judicial review.

We reject, however, Rouse's argument that the board's ability to adjudicate was, in fact, addressed by the board in executive session. That session did address the issue of whether individual members of the board were qualified in that they had no personal bias against Mr. Rouse. However, that was a separate issue from whether the board, as an entity, was competent to review any termination decision which it had previously investigated.

Rouse asserts that he was deprived of his due process rights and a fair hearing because the board, which was statutorily responsible for the original decision to terminate, also acted as the adjudicator to review that decision, pursuant to A.R.S. § 15–541.

We first note that this is an issue of first impression since the repeal of the precursor to A.R.S. § 15–541, A.R.S. § 15–262, and its replacement with the current version.

We start from the premise that there are certain "fundamental" procedural requisites which a person is entitled to receive at an administrative hearing which is quasi-judicial in nature. One is a decision by an impartial decision maker. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). The precise question in this case is whether simply joining investigative/prosecutorial and adjudicative functions results in a partial decision maker. We hold that it does not.

Because both parties cite to federal authority, and those cases are based on the Federal Administrative Procedure Act, 5 U.S.C.A. § 551 et seq. (1970 Edition), we must start by examining that act.

Section 554(d) of the APA provides in part:

An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that case or a factually related case, participate or advise in the decision, or recommended a decision or agency review, pursuant to § 557 of this title, except as witness or counsel in public proceedings.

This subsection does not apply:

a. In determining application for initial licenses;

b. To proceedings involving the validity or appliction of rates, facilities or practices of public utilities or common carriers; or

c. To the agency or a member or members of the body comprising the agency.

This provision, known as the "separation of functions" provision, is grounded in concerns of fairness and impartiality. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). However, pursuant to the exception for agencies in § 554(d)(C), "it is well settled that a combination of investigatory and judicial functions within an agency does not violate due process." *FFC v. Cinderella Career and Finishing Schools*, 404 F.2d 1308, 1315 (D.C.Cir.1968); *Pangburn v. CAB*, 311 F.2d 349, 356 (1st. Cir.1962). The purpose of this exception is to recognize that "Congress, as a general practice, vested administrative agencies with both the specified power to ... initiate an action designed to enforce compliance with ... a statutory provision and the responsibility of ultimately determining the merits of the charges so presented." *Cinderella, supra,* at 315.

The legislative approval of the joining of functions under A.R.S. § 15-541 is even more compelling. This legislative mandate was dispositive in *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). In *Marcello,* the petitioner charged that that Immigration Act violated § 554(d) of the Federal Act in that it provided for a special inquiry officer who was under the supervision and control of the Immigration Service and who performed investigative and prosecutorial functions in deportation matters. In holding that this structure did not violate petitioner's due process rights, the *Marcello* court held that the more specific provision of the Immigration Act controlled over the conflicting separation of functions provision of the Administrative Procedures Act. The court reasoned that "the contention that the combination of functions so strips the hearing of fairness and impartiality as to deprive petitioner of due process is without substance when considered against the long standing practice under the (Immigration) Act, judicially approved in numerous decisions." *Marcello* at 311, 75 S.Ct. at 762.

Rouse cites the cases of *American Cynamid Co. v. FTC,* 363 F.2d 757 (6th Cir.

1966), *Texaco, Inc. v. FTC,* 336 F.2d 754 (D.C.Cir.1964), vacated, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1964), and *Amos Treat Co. v. SEC,* 306 F.2d 260, 266 (D.C.1962) as examples of cases where due process rights were violated "due to factors which give rise to an inherent conflict of interest." We find these cases inapposite. The improprieties in those cases were not challenged under the "separation of functions" provision, § 5 of the APA, but rather § 7 of the APA, which states:

The functions of all officers shall be conducted in an impartial manner. Any such officer may withdraw if he deems himself disqualified and upon the filing in good faith of a timely and sufficient affidavit of personal bias ... (the officer will be disqualified).

In the present case, there is no contention that actual bias of the board members existed with respect to Rouse individually. Rather, the challenge is to the statutory process whereby the board, as an entity, reviews decisions it previously approved.

■ The cases of *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) and *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), cited by petitioner are also distinguishable. In *Ward,* the Mayor of the town of Monroeville also had authority to sit as judge in cases of certain ordinance violations and traffic violations. The Mayor's funding for the village was directly correlated to the amount of fines imposed. No such direct benefit would accrue to the board by terminating Mr. Rouse. *See Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 491, 96 S.Ct. 2308, 2313-14, 49 L.Ed.2d 1 (1976) (distinguishing the direct and personal financial stake of the Mayor in *Ward* with that of a School Board in reviewing the termination of teachers). Petitioner's generalized and speculative argument that the Board might have a "hidden motive" in terminating "an expensive continuing teacher" has no support on the record. To the contrary, the requirement of A.R.S. § 15-541 that dismissal be supported by "good and just cause" and that

these reasons be noted on the record guarantee that no such "hidden motives" color the Board's decision. We find the Board has complied with these mandates. This factor also distinguishes this case from *Murchison*, where the judge "called upon his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression." *In re Murchison* 349 U.S. at 138, 75 S.Ct. at 626. Also noteworthy is the fact that in *Murchison* the acts of the one-man judge-grand jury were contrary to a Michigan law which provided a judge acting in grand jury capacity was forbidden from acting as a judge on any case arising therefrom. In the present case, the action of the Board in reviewing the termination decision was pursuant to Arizona law, not in violation thereof. Furthermore, neither the initial approval of the termination nor the subsequent role in reviewing that termination, could have been delegated to another entity. *See Tucson Unified School District No. 1 of Pima County v. Tucson Education Assn.*, 155 Ariz. 441, 747 P.2d 602 (App.1987.)

Despite the appealing sound of the rule "No man can be a judge in his own case," *In re Murchison, supra* 349 U.S. at 136, 75 S.Ct. at 625, we find the better rule was expressed in *Withrow v. Larkin*, 421 U.S. 35, 51, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975): "The combination of investigatory and adjudicatory functions does not, without more, constitute a due process violation creating risk of bias."

We find particular support for this position in the case of *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). In *Hortonville*, the teachers of the Hortonville School District went on strike. Pursuant to a statute, the School Board was vested with the responsibility of terminating teachers in the event of an illegal strike. The striking teachers objected to allowing the School Board to determine whether their termination was proper because the strike itself stemmed from unsuccessful negotiations with that same Board. The *Hortonville*

court, in holding that petitioner's due process rights "did not guarantee respondent teachers that the decision to terminate their employment would be reviewed by a body other than the Board", *Hortonville* at 496–97, 96 S.Ct. at 2316, relied heavily on the fact that the school board was *statutorily* vested with both the investigatory/prosecutorial and the adjudicatory powers it had exercised. *Id.* at 489, 96 S.Ct. at 2309. In this case, A.R.S. § 15–539 and A.R.S. § 15–541 vest the Scottsdale board with both functions at issue here.

Rouse urges this court to distinguish *Hortonville* on the ground that there, the characterization of the teacher's strike as illegal was a statutorily prescribed conclusion of law, making the board's decision uncontested. Contrary to distinguishing *Hortonville*, this fact illustrates an important factor which is also present here. In *Hortonville*, while the board did terminate the teachers because they went on strike, this act was statutorily mandated, and therefore it was not really a decision instigated by the Board on its own initiative. Thus, although the board technically approved the termination of the striking teachers, they had not made any predeterminations about the merits of the case. "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not disqualify the decisionmaker." *Hortonville* at 489, 96 S.Ct. at 2309. Likewise, here, the school board was responsible for the initial termination, pursuant to A.R.S. § 15–539. However, the decision to terminate Mr. Rouse was instituted, not by the board, but by the staff at Coronado High School. Thus, the board, at the time of the hearing, had little more than "mere familiarity with the facts, gained in performance of their statutory role."

Rouse also alleged, at oral argument, that the Scottsdale School District should be distinguished from an agency because it is actually a political subdivision and its members are elected officials. This does not change our analysis. If anything,

the fact that the board is elected and thus its members are accountable to voters, increases the likelihood of impartial and responsible decisions which benefit the public rather than any one school's administration. *Cf. Hortonville, supra,* at 496, 96 S.Ct. at 2316 ("By virtue of electing [the board] the constituents have declared the [b]oard members qualified to deal with these problems, and they are accountable to the voters for the manner in which they perform").

We note that Arizona's general administrative procedure act does not mandate separation of functions. Accordingly, the Arizona case law on separation of functions is sparse. In *Rottenburg v. Cartwright School District No. 83,* 22 Ariz.App. 473, 528 P.2d 859 (1975), the precise issue before us was raised by a probationary teacher, whose contract was not renewed by the District. The *Rottenburg* court concluded that the fact the Board was "both judge and jury" did not deprive the petitioner of her rights, although it relied on the fact that a probationary teacher had no proprietary interest in renewal of the contract, and therefore no right to a hearing to begin with. On the other hand, it is well settled that a continuing teacher such as Mr. Rousse does have a right to a hearing. *Rottenburg* is not dispositive in the present case.

The Arizona Supreme Court has also limited the, "No Man can be a judge in his own case", language of *Murchison.* In *United States v. Superior Court,* 144 Ariz. 265, 280, 697 P.2d 658, 672 (1985), the court stated:

> "*Murchison* has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, initiate proceedings, and then make the necessary adjudications .... The accepted rule is to the contrary.... (citations omitted)."

■ In the present case, we find that the procedures provided for by A.R.S. § 15–539—§ 15–541, which were followed in this case, provide adequate protection to Mr. Rouse and teachers in his position. Mr. Rouse was represented by his own counsel and was afforded opportunity to present evidence and cross-examine opposing witnesses. The board retained an independent counsel to oversee the hearing— one unrelated to the District or the previous investigation. The board was required to find "good and just cause" for the termination and to list its findings of fact and conclusions of law on the record. We find these satisfactory. *Compare DeGroot v. Arizona Racing Commission,* 141 Ariz. 331, 341, 686 P.2d 1301, 1311 (App.1974):

> Of course in any agency proceeding in which the agency occupies a dual investigative and adjudicative capacity it will be necessary for the agency to receive the results of investigations to make preliminary decisions or approve the filing of formal charges, and then to participate in the resulting hearings. This type of procedure does not violate due process of law.

■ We hold that the proper standard under the Due Process clause of the Fifth and Fourteenth Amendments is not violated unless there is a showing of actual bias or partiality. A mere joining of investigative and adjudicative functions is not sufficient. Rouse has made no such showing of actual bias or partiality here. The decision of the trial court is affirmed. Accordingly, Rouse's request for attorney's fees is denied.

CORCORAN, P.J., and BROOKS, J., concur.