831 P.2d 422

**Frank IPHAAR, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Don Sanderson Ford, Respondent Employer,**

**Argonaut Insurance Company, Respondent Insurance Carrier.**

No. 1 CA–IC 90–136.

Court of Appeals of Arizona, Division 1, Department B.

April 23, 1992.

Reconsideration Denied June 12, 1992.

Lawrence P. Nicholls, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Ariz., Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, Larry L. Smith, Phoenix, for respondents employer and carrier.

## OPINION

CLABORNE, Judge.

This special action calls into question the constitutionality of the procedure for a timely filing of an industrial claim under Ariz.Rev.Stat.Ann. ("A.R.S.") section 23–947 (Supp.1991). Because portions of the statute do not comport with constitutional requirements, we set aside the award. The facts upon which this decision are based are as follows:

The petitioner employee sustained an industrial eye injury February 3, 1981. A workers' compensation claim was filed, accepted for benefits, and a permanent im-

pairment was ultimately awarded and the file was then closed. In 1989, the petitioner requested that his claim be reopened, and the petition to reopen was denied approximately two months later by a notice of claim status by Argonaut Insurance Company ("Argonaut"), the insurance carrier for the employer Don Sanderson Ford ("employer"). Almost four months later in January of 1990, the claimant filed an untimely hearing request. One hearing was held to determine the issue of jurisdiction.

The petitioner testified that he petitioned to reopen in July 1989, because he failed his Department of Transportation physical examination and his ophthalmologist had told him that additional surgery would correct his problem. He stated that Argonaut sent him to see Melvin Gerber, M.D., in October 1989, for an ophthalmology examination. The petitioner testified that he never received the notice of claim status denying his petition to reopen and had no communication with Argonaut after Dr. Gerber's examination. He first became aware of the denial when he contacted Argonaut at the end of December 1989.

The petitioner testified that he lived in a trailer park. Prior to November 1989, the trailer park had an open plexiglas mail slot for each trailer. They were accessible to anyone, and the landlord placed the residents' mail in the slots. The petitioner stated that he had experienced difficulty with nonreceipt of mail before the missing notice of claim status. In November 1989, the postal service replaced the mail slots with individual locked boxes.

An Argonaut claims adjuster testified that during the summer of 1989, she received a petition to reopen from the petitioner. She prepared a notice of claim status denying the petition to reopen, which she placed in outgoing mail on September 15, 1989. The adjuster scheduled the October 2, 1989, independent medical examination with Dr. Gerber and mailed the petitioner a notice of examination on September 18, 1989. Although the adjuster testified that the September 15, 1989, notice of claim status was not returned as undeliver-

able, the adjuster conceded that she had no knowledge of whether the petitioner actually received it.

The adjuster testified that the petitioner called her on December 11, 1989, but she was unavailable. She returned his call on December 19, 1989, but did not reach him. The adjuster eventually spoke with the petitioner on December 27, 1989, and informed him that the petition to reopen had been denied.

On June 14, 1990, the administrative law judge ("ALJ") entered an award dismissing the hearing request for lack of jurisdiction. The ALJ found that clear and convincing evidence was presented by the petitioner that he did not receive the notice and that clear and convincing evidence was presented by the carrier that the notice was properly mailed. He ruled that under the circumstances the petitioner could not be excused for late filing. The ALJ said:

7. That given the aforesaid factual situation here involved and the aforesaid legal principles to be considered herein, it must be, and is, concluded herein the applicant is not to be excused for his late filing; that thus, giving due consideration to the mail distribution situation at the applicant's residence, together with his apparent, and accepted, credibility at time of hearing, the undersigned is convinced the applicant did not, in fact, receive the subject September 15, 1989 Notice, as he claims; that contrarily, however, the undersigned is equally clearly convinced that the subject Notice was duly and properly issued and mailed by the carrier to the applicant's last known (and correct) address, as reflected in the Commission file, and he is therefore not entitled to be excused, pursuant to A.R.S. § 23–947(C); that the subject Notice, therefore, issued September 15, 1989, therefore became final and res judicata, as of December 14, 1989 (A.R.S. § 23–947(B)), and the Commission has no further jurisdiction to consider the subject Petition to Reopen filed herein on July 27, 1989, relative to the merits thereof.

The important parts of the statute involved here are as follows:

**B.** As used in this section, "filed" means that the request for hearing is in the possession of the commission. Failure to file with the commission within the required time by a party means that the determination by the commission, insurance carrier or self-insuring employer is final and res judicata to all parties. The industrial commission or any court shall not excuse a late filing unless any of the following applies:

. . . . .

3. The person to whom the notice is sent shows by clear and convincing evidence that the notice was not received.

**C.** The late filing shall not be excused under subsection B of this section if the person to whom the notice is sent or his legal counsel knew or, with the exercise of reasonable care and diligence, should have known of the fact of the notice at any time during the filing period. The late filing shall not be excused under subsection B of this section if it is shown by clear and convincing evidence that the notice was sent by mail or delivered personally to the last known mailing address or place of residence of the person to whom it is addressed and to his legal counsel, as shown on the records of the commission.

A.R.S. § 23–947.

The ALJ found by clear and convincing evidence that the notice was not received by the petitioner, thereby satisfying § 23–947(B)(3). Yet he also found by the same type of evidence (clear and convincing) that the notice of hearing was properly mailed by the carrier, which satisfied paragraph (C) of the same statute.

■ Petitioner contends that A.R.S. section 23–947(C) unconstitutionally deprives petitioner of a meaningful notice of a hearing and therefore invades his right of due process under both the United States and Arizona Constitutions. *See* U.S. Const. amend. XIV; Ariz. Const. art. II, § 4.

■ Before reaching the constitutionality issue, a brief summary of the legislative history of the "hearing" statute, § 23–947, is helpful. The original Workers' Compensation Act had no provision for requesting a hearing in order to protest an award.[1] *See* House Bill No. 227, Laws 1925, ch. 83. However, the Industrial Commission Rules of Procedure provided an administrative rehearing procedure, but only if the application was filed within twenty days. *See, e.g., Hale's Estate v. Industrial Comm'n,* 78 Ariz. 202, 277 P.2d 1014 (1954). An award became final unless the application for rehearing was timely filed and *no* exceptions were recognized. *Id.*

In 1968, the legislature adopted a statutory hearing provision for the first time, contemporaneously with the introduction of notices of claim status. *See* Laws 1968, 4th S.S., ch. 6, § 20. Arizona Revised Statutes § 23–947 required that a request for hearing be filed within 60 days and contained no exceptions to that limitation. Initially, the case law in Arizona treated the 60–day period as final, and the Industrial Commission was held to have no authority to waive or excuse a late filing of a hearing request. *See, e.g., Russell v. Industrial Comm'n,* 104 Ariz. 548, 456 P.2d 918 (1969).

An exception was first recognized by the Arizona Supreme Court in *Parsons v. Bekins Freight,* 108 Ariz. 130, 493 P.2d 913 (1972). The Industrial Commission could excuse an untimely hearing request if there was a meritorious excuse, the delay was not excessive, and the effect was nonprejudicial to the carrier. Following *Parsons,* two additional exceptions were judicially recognized. *See, e.g., Industrial Indemnity Co. v. Industrial Comm'n,* 27 Ariz.App. 296, 554 P.2d 892 (1976) (clerical errors); *Van Horne v. Industrial Comm'n,* 111 Ariz. 237, 527 P.2d 282 (1974) (estoppel based on employer or carrier representations).

---

1. The term "award" applies to any finding or decision of the commission regarding the amount of compensation or benefits due a claimant. *O'Neill v. Martori,* 69 Ariz. 270, 212 P.2d 994 (1949).

In 1980, the legislature amended A.R.S. section 23–947, adding language that specifically prohibited the Industrial Commission or any court from excusing a late filing of a hearing request except in certain specifically enumerated situations. Thus, the legislature expressly repudiated the expansion of discretion granted the Industrial Commission by *Parsons* and the decisions following it. *See Roman v. Arizona Department of Economic Security*, 130 Ariz. 581, 637 P.2d 1084 (App.1981).

It is not that the ALJ made inconsistent findings. One can properly mail a notice and the person to whom it is mailed can still not receive it. What the legislature did was to excuse late filing if there was a clear and convincing showing that the employee did not receive the notice of claims status. Once they gave the employee this right, they then took it away by saying no excuse will be honored if by clear and convincing evidence it is shown that the notice of claims status was properly mailed. The effect of this conflict is to deprive an employee of a hearing despite a clear and convincing showing that he never received the employer's notice of claims status.

The petitioner says that this conclusion denies him of his property right in workers' compensation benefits without notice and a hearing. We make a few preliminary observations concerning this argument. First, this court has held that pursuant to A.R.S. section 23–947, neither the 90–day time limitation for filing a request for hearing nor the grounds for excusing a late filing are unconstitutional. *See Wilson v. Industrial Comm'n*, 147 Ariz. 261, 709 P.2d 895 (App.1985). *Wilson* addressed only subsections A and B; there was no mention of subsection C.

 This court has held that the right to receive workers' compensation benefits is a property right. *See United Riggers Erectors v. Industrial Comm'n*, 131 Ariz. 258, 640 P.2d 189 (App.1981). It is axiomatic that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. amend. XIV; Ariz. Const. art. II, § 4. The elements of proce-

dural due process are notice and an opportunity to be heard. *See Phoenix Metals Corp. v. Roth*, 79 Ariz. 106, 284 P.2d 645 (1955). The type of notice that due process requires is that which is reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Although the carrier correctly claims that perfect notice is not required, completed service of process is not synonymous with procedural due process. The Supreme Court has stated that the procedural due process a person is entitled to should be determined by evaluating the entire procedural system, *including the corrective process available*, not just one isolated rule of service. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). For example, this analysis was applied in the context of service of process by first-class mail in a bankruptcy proceeding. *See Matter of Park Nursing Center, Inc. v. Samuels*, 766 F.2d 261 (6th Cir.1985). In *Park*, the court found that service of process by mail did not violate due process because any party who failed to receive that notice had remedies available for setting aside a judgment of default entered against the party. *Id.* at 263. The court said that the notice rule "must be viewed against the backdrop of other available procedures for remedying any defects or limitations in the rule." *Id.* The court also said that had first class mail delivery failed to give the appellant actual notice through no fault of his own, *and if the judgment had been automatically irrevocable*, then the appellant would have had a strong procedural due process argument.

Here, the claimant proved by clear and convincing evidence that he did not receive actual notice through no fault of his own. The effect of the rule set forth in subsection C of the statute effectively precludes the claimant from pursuing any corrective measure. In other words, the decision

against the claimant is "automatically irrevocable." Although the statute purports to give a remedy to a claimant who can establish nonreceipt under subsection B(3), subsection C makes the remedy meaningless for all practical purposes. In our opinion, this result violates a claimant's due process right to a hearing.

We acknowledge that the findings of facts in this case are unique. Seldom will a fact finder be able to find clear and convincing evidence of both non-receipt and proper mailing. Yet, because subsection C of the statute allows such a result, it violates the claimant's due process right to notice and a hearing.

For these reasons, the award of the ALJ is set aside.

JACOBSON, P.J., and LANKFORD, J., concur.