993 P.2d 1066

Bernard M. COMEAU, D.D.S.,
Plaintiff–Appellant,

v.

The ARIZONA STATE BOARD
OF DENTAL EXAMINERS
Defendant–Appellee.

No. 1 CA–CV 98–0344.

Court of Appeals of Arizona,
Division 1, Department E.

May 13, 1999.

Reconsideration Denied June 7, 1999.

Review Denied Feb. 8, 2000.

Jeffrey J. Tonner, P.C. by Jeffrey J. Tonner, Phoenix—and—Udall, Shumway, Blackhurst, Allen & Lyons, P.C. by Gregory L. Miles, Mesa, Attorneys for Appellant.

Janet A. Napolitano, Attorney General, by Victoria M. Mangiapane, Assistant Attorney General, Phoenix, Attorneys for Appellee.

## OPINION

NOYES, Judge.

¶1 Appellant, a dentist, was censured by the State Board of Dental Examiners after it conducted an investigative interview in response to a patient's complaint. Appellant sought judicial review, the superior court affirmed, and Appellant filed this appeal. We conclude that Appellant received a due process hearing, that he waived his right to a formal hearing, and that the Board's decision is supported by substantial evidence.

### I.

¶2 The Board investigated Appellant based on a complaint by a patient regarding transitional dentures and related treatment she received from Allbrite Dental Center, which was co-owned by Appellant and Mr. Eldon Jenkins. The Center had offices in Mesa and Phoenix. Appellant was the dentist in the Mesa office and Dr. Mark Bride was the dentist in the Phoenix office.

¶3 In June and July 1995, Dr. Bride extracted the patient's teeth and performed upper and lower alveoloplasties. To save money, the patient had no temporary dentures while healing. In early August, Dr. Bride saw the patient three times to fit the transitional dentures. When Dr. Bride's dental assistant quit on August 9, Appellant's dental assistant, Laura Goodhines, came in from Mesa to assist Dr. Bride. Dr. Bride next saw the patient on Friday, August 11, for a try-in. After he decided that the dentures needed adjusting, Dr. Bride told the patient to leave them and come back on Monday for another try-in. The patient came back on Monday but Dr. Bride did not; he suddenly quit the Center that weekend to start his own practice. He later told the Board that the volume of patients at the Center had become too much for him.

¶4 On Monday, August 14, Appellant returned from vacation to find that he had a full schedule of patients in Mesa and Phoenix—and no dentist in Phoenix. He told Goodhines to send the Phoenix patients to Mesa or reschedule them. Goodhines did what she could, but she was unable to contact and reschedule all patients. The next day, Goodhines called Appellant and said that the patient was in the Phoenix office and was demanding her dentures. When Appellant found out that the patient had a try-in with Dr. Bride on Friday and was coming in to see if the adjustments were successful, Appellant told Goodhines to have the patient try the dentures. Goodhines later called back and said the patient thought the dentures were all right. Appellant told Goodhines to let the patient take them, and to return for an evaluation when Appellant could get to the Phoenix office.

¶5 The patient returned to the Phoenix office two days later, complaining about the dentures. The Phoenix office still had no dentist. After talking to Appellant on the phone, Goodhines smoothed a rough area of the dentures and returned them to the patient. A denturist is authorized to fit dentures without supervision. Goodhines was not a denturist.

¶6 On August 25, Appellant saw the patient for the only time. She was still having problems with the dentures. As she later told the investigative panel, "I couldn't bite, I couldn't smile. I couldn't talk. If I tried to talk, I'd almost get sick. And if I tried to chew—I couldn't chew anything." Appellant

could not resolve the problems with these dentures.

¶ 7 On November 14, 1995, the patient filed a complaint with the Board about her treatment by Dr. Bride and Appellant. The Board appointed Dr. Lawrence Pozil to investigate the complaint. Mr. Jenkins later gave the patient a full refund—in return for the dentures and a letter from the patient saying that she wished to drop her complaint. Dr. Pozil decided that the allegations of aiding and abetting unauthorized practice were sufficiently serious that the Board would want the investigation to continue despite the patient's settlement with Allbrite Dental Center.

¶ 8 Dr. Pozil investigated and wrote a report concerning Appellant and Dr. Bride. Based on that report, the Board issued a notice of investigative interview pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 32–1263.02(C) (Supp.1998).

¶ 9 The investigative interview was held on February 7, 1996. It was a public, two-hour, on-the-record hearing involving thirteen people: three panel members (two of whom were dentists), the investigator (who was a dentist), dental assistant Goodhines, Dr. Bride's former dental assistant, Appellant and his lawyer, Dr. Bride and his lawyer, the patient and her husband, and Mr. Jenkins.

¶ 10 The following witnesses testified under oath at the hearing: Dr. Bride; Dr. Bride's former dental assistant; dental assistant Goodhines; the patient; Appellant; and the investigator. The witnesses made narrative statements and answered questions from the investigator and panel members. The lawyers made statements to the panel, engaged in dialogue with the panel, and made a few objections that were ruled on by the chairman. The lawyers were allowed indirect questioning of witnesses, by stating the question to the chairman, who decided whether to put it to the witness.

¶ 11 The facts largely were undisputed. Appellant's position was summarized by what his counsel, Dr. Gary Smith, who was also a dentist, said to end a debate between Dr. Pozil and Appellant about whether Appellant had authorized Goodhines to "fit" the dentures or merely to "give" them:

DR. SMITH: He's conceded that because of the loss of Dr. Bride unexpectedly, measures were taken to try and protect the public's health, safety and welfare in the best way they thought under the circumstances. In regards to [this patient] and one other patient specifically that Dr. Comeau remembers, he made a policy decision as dentures being demanded because they had been paid for in advance, they agreed to provide those dentures to the patients contingent upon those patients either being seen in the Mesa office or returning to the Phoenix office when there was a dentist there. That is a technical violation. Doctor concedes that. But I don't think he needs to be badgered on that again.

¶ 12 The panel chairman found that Dr. Pozil had not been badgering Appellant. The record supports that finding. After public deliberations, the panel found in favor of Appellant on allegations 1, 2, 9, and 10 and against him on allegations 3 through 8. The panel concluded that Appellant had engaged in unprofessional conduct and it recommended that he be censured. (The panel dismissed all allegations regarding Dr. Bride because it found that he had abandoned the Center but not the patient, and that the patient was not in need of immediate attention when he did so.)

¶ 13 The Board considered the matter on April 12, 1996. Eight Board members and eight Board staff members were present, as was Appellant and his lawyer, Dr. Smith. In opening statement, Dr. Smith told the Board, "Dr. Comeau is going to appear in front of you and admit wholeheartedly there were a couple of technical violations of statute involving aiding and abetting or failure to supervise staff." Appellant, however, made no such admissions. He told the panel:

I believe that I'm guilty of none of the findings of the review committee. I am guilty of considering the health and welfare of all the patients in the offices of which I am an owner, whether they be my patients or patients of the doctors whom I

employ. I made a decision during a very stressful time, perhaps without adequate input, which I believed at that time was in the best interests of this patient, and I must stand by it. [The patient] was a very demanding patient. . . .

¶ 14 After public deliberations, the Board found in favor of Appellant on allegations 3 and 8, and it found against him on allegations 4 through 7. The Board concluded that Appellant had engaged in unprofessional conduct as defined in A.R.S. section 32–1201(18)(n), (q), and (s) (1996), which provides as follows:

18. "Unprofessional conduct" means the following acts, whether occurring in this state or elsewhere:

. . . .

(n) Any conduct or practice which does or would constitute a danger to the health, welfare or safety of the patient or the public.

. . . .

(q) Employing unlicensed persons to perform or aiding and abetting unlicensed persons in the performance of work which can be done legally only by licensed persons.

. . . .

(s) Willfully or intentionally causing or permitting supervised personnel or auxiliary personnel operating under his supervision to commit illegal acts or perform an act or operation other than that permitted under the provisions of article 4 of this chapter and by the rules adopted by the board pursuant to § 32–1282.

¶ 15 The Board censured Appellant and ordered him to take twelve hours of specified education. The Board also placed Appellant on probation for eighteen months or until completion of the education requirement, whichever was later. The Board later denied Appellant's petition for rehearing.

¶ 16 Appellant filed a complaint for judicial review. The superior court affirmed the Board's ruling in an unsigned minute entry on March 30, 1998. Although Appellant filed a notice of appeal on April 29, the judgment was not signed until June 10. Because the premature notice of appeal was followed by entry of an appealable judgment, we have jurisdiction of the appeal. *See Barassi v. Matison*, 130 Ariz. 418, 422, 636 P.2d 1200, 1204 (1981).

## II.

¶ 17 Appellant has four main arguments: (1) the investigative interview violated his procedural due process rights; (2) section 32–1263.02 is unconstitutional to the extent that it permits the Board to impose sanctions without a hearing; (3) the notice of investigative interview was insufficient; and (4) the Board's decision was not supported by substantial evidence and its sanction order was arbitrary, capricious, and an abuse of discretion.

### Due Process

¶ 18 We agree that Appellant has a property interest in his dental license, that he may not be deprived of that interest without due process of law, and that censure is a form of deprivation. "[C]ensure is a statement by a governmental entity and may preclude its subject from denying, in a future proceeding, that he committed the wrong ascribed to him." *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir.1988). If the physician "again is the target of a complaint, the censure may count in the lists against him. If this should happen, the stakes are more than *de minimis*." *Id.*

¶ 19 When a professional license is at stake, "the State's interest must justify the degree of infringement which ensues from the sanction, and appropriate procedures must be used to guard against arbitrary action." *Schillerstrom v. State*, 180 Ariz. 468, 471, 885 P.2d 156, 159 (App.1994). It is also true that "the right to pursue a profession is subject to the paramount right of the state under its police powers to regulate business and professions in order to protect the public health, morals and welfare." *Cohen v. State*, 121 Ariz. 6, 10, 588 P.2d 299, 303 (1978).

¶ 20 Procedural due process means that a party had the opportunity to be heard " 'at a meaningful time and in a mean-

ingful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). "The elements of procedural due process are notice and an opportunity to be heard." *Iphaar v. Industrial Comm'n,* 171 Ariz. 423, 426, 831 P.2d 422, 425 (App.1992). Due process is not a static concept; it must account for "the practicalities and peculiarities of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

¶ 21 The law provides for a formal hearing in some cases and an informal investigative interview in others. When the subject's license has been summarily suspended, or when the Board might suspend or revoke the license if the allegations are proven, the Board must "immediately" initiate the formal hearing procedure of Title 41, Chapter 6, A.R.S. sections 41–1001 to 41–1071 (the Administrative Procedure Act). *See* A.R.S. § 32–1263.02(C) and (D)(1). The Board must also initiate the formal hearing procedure if the licensee refuses to cooperate in the investigative interview. *See id.*

¶ 22 In this case, the Board screened the complaint and decided that the investigative interview process was appropriate. Appellant cooperated in that process until it produced a result he did not like. He then began to argue that he had been denied procedural due process because his hearing was part of the investigation. Appellant argues that he had a right to a formal hearing after the Board completed its investigation. We reject that argument, for it is contrary to the statutory scheme. Section 32–1263.02(C) creates the investigative interview as an alternative to a formal hearing, if both the Board and the licensee agree. A licensee in Appellant's situation can have either an investigative interview or a formal hearing, but he cannot have one and then, if displeased with the result, have the other, too.

¶ 23 We hold that the investigative interview in this case satisfied the requirements of procedural due process. Appellant knew that his license would not be revoked or suspended as a result of the investigative interview. Appellant had the right to be represented by counsel, and he was represented. Appellant had sufficient notice of the charges and the evidence to prepare an explanation and present a defense. The panel subpoenaed the material witnesses and documents. The witnesses testified under oath and were questioned by the panel, by the investigator, and by Appellant's counsel (through the panel chairman). Appellant testified and was given the opportunity to explain his position to a panel of two dentists and one lay person and, later, to the entire Board. Appellant made no argument to the panel or the Board that other witnesses should have testified, or would have testified at a formal hearing. He made no argument that other evidence should have been presented, or would have been presented at a formal hearing.

¶ 24 Appellant argues that he would have "poisoned" his case if he refused to cooperate in the investigative interview. This argument has some theoretical appeal. Lack of cooperation with colleagues often has a pejorative connotation, and one whose professional conduct is being scrutinized by a licensing authority will be understandably reluctant to refuse to cooperate. But, any fear of refusing to cooperate was plainly hypothetical here, when it was not expressed until after Appellant was dissatisfied with the results of his cooperation, and when Appellant's counselled position from the outset was that he had nothing to fear from anyone because any violations he may have committed were technical and should be forgiven.

¶ 25 When the law provides that the right to a formal hearing is invoked by refusing to cooperate with an informal interview, the licensee obviously cannot be penalized for invoking that right. *See State v. Kerekes,* 138 Ariz. 235, 237, 673 P.2d 979, 981 (App.1983) (citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the court stated, "Having concluded that the appellant had a right not to answer questions put to him by the probation officer, it follows, of course, that he could not be penalized for invoking that right."). The Board's counsel acknowledged as much at oral argument, and she avowed that the Board never penalized

anyone for invoking the right to a formal hearing. In case there is any doubt on this subject, we hold that a licensee's refusal to cooperate in the investigative interview process cannot be penalized, for that refusal is nothing more than the exercise of the right to a formal hearing, which cannot be penalized.

¶ 26 Appellant argues that the Board's investigator was involved in "an unconstitutional commingling of functions" because the investigator was also a witness, a prosecutor, and a judge. An overlap of investigatory, prosecutorial, and adjudicatory functions in an agency employee does not necessarily violate due process. *See In re Ackel,* 155 Ariz. 34, 39, 745 P.2d 92, 97 (1987). An agency is permitted to combine some functions of investigation, prosecution, and adjudication unless actual bias or partiality is shown. *See Sigmen v. Arizona Dep't of Real Estate,* 169 Ariz. 383, 388, 819 P.2d 969, 974 (App.1991); *Rouse v. Scottsdale Unified Sch. Dist.,* 156 Ariz. 369, 374, 752 P.2d 22, 27 (App.1987).

¶ 27 Dr. Pozil investigated the complaint and prepared a report. At the investigative interview, he also made some statements to the panel and asked some questions of witnesses, including Appellant. Dr. Pozil was not on the panel and did not participate in the discussion that preceded the panel's findings and recommendations. Appellant does not allege actual bias or partiality by Dr. Pozil, and the record reflects none. What the record reflects is a conscientious effort by the investigator to do what he was appointed to do in service to his profession.

¶ 28 Appellant argues that he received insufficient notice of the charges. Due process requires prior notice of the charges so that the accused has a meaningful opportunity for explanation and defense. *See Elia v. State Bd. of Dental Exam'rs,* 168 Ariz. 221, 228, 812 P.2d 1039, 1046 (App. 1990). "The type of notice that due process requires is that which is reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Iphaar,* 171 Ariz. at 426, 831 P.2d at 425. As applied to a medical licensee, it has been said that due process requires notice of the nature of the wrong charged and the particular instances of its perpetration. *See Medical Licensing Bd. of Ind. v. Ward,* 449 N.E.2d 1129, 1145 (Ind.App.1983).

¶ 29 The notice of investigative interview lists ten allegations based on one complaint by one patient. Appellant received a copy of the patient's complaint prior to the hearing. The panel subpoenaed the patient's records from Appellant, and he provided them to the panel. Appellant therefore knew what records the panel and the Board had, and he had those records himself. The notice of the charges was sufficient.

¶ 30 Appellant also argues that the Board would have held an investigative interview and sanctioned him with or without his cooperation. This argument appears to be a claim that the Board routinely violates section 32–1263.02(C), which provides that if the licensee refuses to cooperate, "the matter shall be immediately advanced to a formal board hearing." The record contains no evidence that the Board would not have granted a formal hearing if Appellant had refused to cooperate in the investigative interview, and we therefore presume that the Board would have done so. *See Kerr v. Waddell,* 185 Ariz. 457, 465, 916 P.2d 1173, 1181 (App.1996) (finding that agency adjudications enjoy a presumption of honesty and integrity).

### Constitutionality of the Statute

¶ 31 Appellant argues that section 32–1263.02 is unconstitutional to the extent it permits the Board to impose sanctions without a hearing. We reach a constitutional question only when necessary to decide the case. *See State v. Yslas,* 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984). Because we hold that the statutory process as implemented by the Board in this case qualified as a due process hearing, the statute is constitutional as applied here, and we need not speculate about its application in other cases.

### Notice

¶ 32 Appellant argues that the notice of investigative interview did not advise

him of the right to a formal hearing. The notice was indeed defective in that regard. (At oral argument, the Board's counsel advised that the current notice advises of this right and has the licensee elect either an investigative interview or a formal hearing.) Although the notice did not advise Appellant of his right to a formal hearing, it did prominently and repeatedly advise him that the investigation was being conducted pursuant to A.R.S. section 32–1263.02(C). That statute describes the right to a formal hearing, and how that right is invoked.

¶ 33 Even if Appellant was unfamiliar with the statute, he was represented by counsel throughout this process and he makes no claim that he was unaware of his right to a formal hearing. At oral argument, Appellant's present counsel conceded that former counsel presumably knew the law as provided in the cited statute. We make the same presumption. *See In re Hohn,* 171 Ariz. 539, 542, 832 P.2d 192, 195 (1992) ("A lawyer may not close his eyes to the statute in front of him and then claim he did not know the law.").

¶ 34 We hold that any failure of the notice to advise Appellant of his right to a formal hearing was harmless. We also hold that the only reasonable conclusion to draw from this record is that Appellant made a knowing, intelligent, and voluntary decision to cooperate in the investigative interview by a panel of his peers (two dentists and one lay person), and to thereby waive his right to a formal hearing before an administrative law judge.

**Evidence and Sanction**

¶ 35 Appellant argues that the evidence does not support the Board's decision. On review, "the trial court may not re-weigh the evidence in order to resolve perceived conflicts. Rather, in order to reverse the agency's decision, the trial court must find that there was no substantial evidence to support the agency decision." *DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 335–36, 686 P.2d 1301, 1305–06 (App.1984).

¶ 36 The Board found allegations 4 through 7 to be proved. Finding 4 was that

treatment planning was inadequate because Appellant told the patient to wait two to three months before coming in for reevaluation. Although Appellant denied telling the patient to wait that long, one of his notes in the patient's record supports a contrary conclusion; it states as follows: "Patient having some difficulty talking—will evaluate again in 2–3 mos. and consider refund or redo."

¶ 37 Findings 5 and 6 were that Appellant aided and abetted unlicensed practice and failed to supervise his staff. Appellant's counsel conceded that these allegations were "technically" proved. With or without that concession, the testimony of Goodhines and the patient provided substantial support for these findings by the Board. The Board was free to reject Appellant's semantical argument that he authorized Goodhines to "give" the dentures to the patient but did not authorize Goodhines to "fit" the dentures.

¶ 38 Finding 7 was that the dentures were inadequate because of the patient's problems with them, insertion by an unlicensed employee, and having the patient wait two to three months for reevaluation. This finding was based on findings 4, 5, and 6, and was supported by the same substantial evidence that supported them.

¶ 39 Appellant argues that his violations were technical and should have been forgiven because he did his best under difficult circumstances with a difficult patient. Appellant showed some extenuating circumstances, but the weight to give them was for the Board to decide, in the exercise of its discretion. The court will not overturn the Board's decision unless the record reflects that the Board acted arbitrarily, capriciously, or abused its discretion. *See Schillerstrom,* 180 Ariz. at 471, 885 P.2d at 159. This record reflects no such errors. We conclude from this record that the Board did not abuse its power by deciding that Appellant's violations were more serious than Appellant thought they were.

¶ 40 The judgment is affirmed.

CONCURRING: NOEL FIDEL, Presiding Judge, SHELDON H. WEISBERG, Judge.