NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ELLIOTT E. FISHER, *Plaintiff/Appellant*,

*v.*

ARIZONA STATE BOARD OF NURSING, *Defendant/Appellee*.

No. 1 CA-CV 18-0167
FILED 2-21-2019

---

Appeal from the Superior Court in Maricopa County
No. LC2017-000132-001 DT
The Honorable Patricia Ann Starr, Judge

**AFFIRMED**

---

COUNSEL

Elliott E. Fisher, Apache Junction
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Duval Raine
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Judge:

¶1        Elliot Fisher appeals the superior court's order affirming the decision of the Arizona State Board of Nursing ("the Board") to revoke Fisher's practical nurse license.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Fisher was licensed by the Board as a practical nurse.  In 2012, the Board received a complaint from Fisher's employer, a youth mental-health and substance-abuse treatment center, about his inappropriate interactions with adolescent patients.

¶3        Following its investigation, the Board filed a complaint and notice of hearing, requesting the Office of Administrative Hearings conduct a formal hearing to determine whether grounds existed for the Board to discipline Fisher.  The complaint alleged as a basis for disciplinary action that Fisher had committed unprofessional conduct by (1) making inappropriate comments with sexual connotations to female adolescent patients; (2) driving his vehicle rapidly across a parking lot toward his employer's management personnel, causing them to fear for their safety; (3) failing to disclose all of his employers for the previous five years to the Board in response to its investigative request; (4) improperly obtaining confidential healthcare information about a former patient; (5) failing to report his conviction for felony computer tampering to the Board within ten days; (6) failing to appear for a shift as a charge nurse; and (7) refusing to consistently lock his medication cart.[1]  *See* A.R.S. § 32-1601(26)(b), (d), (h),

---

[1]        The Board's original complaint alleged that Fisher's felony conviction constituted grounds to revoke his license.  *See* former Ariz. Rev. Stat. ("A.R.S.") § 32-1606(B)(17) (requiring the Board to revoke the license of a person who has been convicted of a felony).  During the course of these proceedings, former subsection (B)(17) was renumbered (B)(16), *see* 2015 Ariz. Sess. Laws, ch. 262, § 4 (1st Reg. Sess.), and later again renumbered to (B)(17), *see* 2018 Ariz. Sess. Laws, ch. 1, § 17 (1st Spec. Sess.).  The Board removed the allegation that Fisher's felony conviction constituted grounds to revoke his license after Fisher's conviction was designated a misdemeanor.  *See* 2016 Ariz. Sess. Laws, ch. 282, § 1 (2nd Reg. Sess.) (adding a caveat for a licensee who has been convicted of a felony that has been designated a misdemeanor in then-A.R.S. § 32-1606(B)(16)).

(j), (*l*)[2]; Ariz. Admin. Code ("A.A.C.") R4-19-401(C)(6), (8), (9); R4-19-403(1), (3), (4), (9), (26), (29), (31).

**¶4**   Fisher received notice of the complaint and participated in a two-day contested evidentiary hearing. After the hearing, the Administrative Law Judge ("ALJ") issued findings of fact and conclusions of law in a decision recommending the Board revoke Fisher's license. The ALJ concluded Fisher had committed unprofessional conduct in violation of Arizona law and applicable regulations, and his lack of accountability demonstrated he could not be "regulated," meaning, in the Board's opinion, Fisher's unprofessional behaviors could not be eliminated or controlled through education, training, or supervision.

**¶5**   The Board accepted the ALJ's order in its entirety and revoked Fisher's license. *See* A.R.S. § 41-1092.08(B). Fisher sought superior court review of the Board's decision. *See* A.R.S. §§ 12-905(A), 32-1665(B). The superior court affirmed the decision, concluding the Board had afforded Fisher due process and substantial evidence supported the decision.

**¶6**   Fisher timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-913. *See Svendsen v. Ariz. Dep't of Transp.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014) (interpreting § 12-913 as permitting an appeal to this court).

## ISSUES

**¶7**   Fisher's opening brief fails to state the issues presented for review, as required by Arizona Rule of Civil Appellate Procedure 13(a)(6). However, his brief may be fairly read to challenge the superior court's order affirming the Board's decision on the grounds that the hearing procedure violated his right to due process and the Board's decision was not supported by substantial evidence.

## ANALYSIS

**¶8**   In reviewing an order upholding the decision of an administrative agency, we review whether the agency's determination is

---

[2]  The legislature has renumbered the applicable statute. *See* 2017 Ariz. Sess. Laws, ch. 80, § 1 (1st Reg. Sess.) (renumbering subsection (24) of A.R.S. § 32-1601 as subsection (26)). Because the relevant provisions are substantially the same, we cite the current version of this and all statutes throughout this decision.

contrary to law, not supported by substantial evidence, arbitrary and capricious, or an abuse of discretion. A.R.S. § 12-910(E). We view the facts in the light most favorable to upholding the agency's decision and will not re-weigh conflicting evidence. *Shorey v. Ariz. Corp. Comm'n*, 238 Ariz. 253, 258, ¶ 14 (App. 2015); *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 335-36 (App. 1984). We will affirm if substantial evidence supports the decision, but we review *de novo* questions of law. *Comm. for Justice & Fairness v. Ariz. Sec'y of State's Office*, 235 Ariz. 347, 351, ¶ 17 (App. 2014).

### I. Due Process

**¶9** A professional licensee maintains a property interest in his license, and the State must afford due process before restricting that interest. *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106, ¶ 18 (App. 1999). Due process generally requires "notice and an opportunity to be heard" in a meaningful manner and at a meaningful time. *Id.* at 106-07, ¶ 20 (citations omitted). The party asserting a denial of due process must show prejudice. *Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010). We review *de novo* an alleged denial of due process. *Savord v. Morton*, 235 Ariz. 256, 260, ¶ 16 (App. 2014) (citation omitted).

**¶10** Although Fisher does not specify how he believes the Board denied him due process, he asserts the ALJ (1) denied his request to continue the hearing, and (2) interrupted him at the hearing and would not let him present additional evidence.

**¶11** The Board filed its original complaint in March 2016 and requested a May 2016 hearing date. The ALJ continued the hearing date several times due to events in Fisher's criminal proceeding and witness unavailability. The first hearing day occurred on November 8, 2016. After the ALJ scheduled the second hearing day, Fisher filed an emergency motion to continue, explaining (1) he was unable to attend because he was the caregiver for a terminally-ill woman, and (2) he needed additional time to obtain discovery and prepare for the hearing.[3] The ALJ denied the motion, noting Fisher had offered no evidence that his care for a terminally-ill patient prohibited him from attending the hearing and his failure to earlier seek discovery did not constitute grounds to continue the hearing date. Fisher subsequently testified at length during the hearing, but he did not introduce any exhibits and declined to present additional witnesses. He

---

[3] Fisher also asked the ALJ to stay the action, pending resolution of all appeals associated with his criminal conviction and his complaint against the Board's investigator.

then attempted to repeat his testimony during his closing argument, and the ALJ instructed him not to restate his testimony but to summarize why he disagreed with the Board's charges.

¶12          Fisher had notice and a fair opportunity to present his evidence at the hearing, and the ALJ's refusal to continue the hearing to a later date, or to allow Fisher to re-open his case and offer additional testimony during his closing argument, did not deprive Fisher of his right to due process. *See* A.R.S. § 41-1092.07(F)(1) ("Neither the manner of conducting the hearing nor the failure to adhere to the rules of evidence required in judicial proceedings is grounds for reversing any administrative decision or order if the evidence supporting the decision or order is substantial, reliable and probative.").

    II.     *Substantial Evidence*

¶13          Substantial evidence supports the Board's decision that Fisher engaged in unprofessional conduct as defined by Arizona law and applicable regulations. *See* A.R.S. § 32-1601(26)(b), (d), (h), (j), (*l*); A.A.C. R4-19-401(C)(6), (8), (9); R4-19-403(1), (3), (4), (9), (26), (29), (31).

        A. *Behavior That Might Be Harmful or Dangerous to the Health of
            a Patient or the Public*

¶14          The record shows Fisher made inappropriate statements containing sexual connotations to female adolescent patients. He admitted to two psychologists, and during the administrative hearing, that he had said, "When I close my eyes I think of adult things," and "Beat me, hit me, call me dirty names," while in the presence of female adolescent patients. The Board's investigator testified that sexual innuendo was particularly inappropriate with, and potentially harmful to, the vulnerable patient population in the facility where Fisher worked.

¶15          Further, Fisher admitted that he was "hot" and "really mad" when he drove his vehicle rapidly toward his employer's management personnel in a parking lot after he received negative feedback about these comments. The individuals he approached feared for their safety and documented the incident.

¶16          Fisher also refused to keep his medication cart locked when he was not near it, failed to arrive for his scheduled shift at another facility, and quit without notice. The Board's investigator testified that this conduct increased the risk of patient harm because (1) an unlocked medication cart increased the risk of patients accidentally or intentionally ingesting unsafe

medications, (2) Fisher was responsible for supervising nursing assistants, and (3) quitting without notice made it difficult for the facility to ensure adequate nursing staff.

¶17 These behaviors supported the Board's conclusion that Fisher engaged in unprofessional conduct. *See* A.R.S. § 32-1601(26)(d) (including as unprofessional conduct "[a]ny conduct or practice that is or might be harmful or dangerous to the health of a patient or the public"); A.A.C. R4-19-403(9) ("[f]ailing to take appropriate action to safeguard a patient's welfare or follow policies and procedures of the nurse's employer designed to safeguard the patient").

### B. Making a Written False or Inaccurate Statement to the Board During an Investigation

¶18 During its investigation, the Board sent Fisher a questionnaire that asked him to list all of his employment for the previous five years. Although Fisher avowed his answers were "true, complete and correct," the Board later obtained records from other employers that Fisher did not identify, and he admitted at the hearing that he failed to disclose several of his previous employers.

¶19 This evidence supported the Board's conclusion that Fisher engaged in unprofessional conduct by making a written false or inaccurate statement to the Board during its investigation. *See* A.A.C. R4-19-403(26) (including as unprofessional conduct "[m]aking a written false or inaccurate statement to the Board or the Board's designee in the course of an investigation"); *see also* A.R.S. § 32-1601(26)(j) ("[v]iolating . . . a rule that is adopted by the board").

### C. Committing a Felony and Failing to Self-Report a Felony Conviction to the Board

¶20 In 2015, a jury convicted Fisher of computer tampering, a class six felony.[4] Fisher admitted at the hearing that he did not personally notify the Board of his conviction.

¶21 This evidence supports the Board's determination that Fisher engaged in unprofessional conduct by committing a felony and failing to

---

[4] The conviction was not, as Fisher suggests, for a misdemeanor charge. The Pinal County Attorney charged Fisher with, and the jury convicted him of, a class six undesignated felony. Ten months later, the court designated the conviction a class one misdemeanor.

self-report a conviction for a felony or undesignated offense within ten days. *See* A.R.S. § 32-1601(26)(b) (including as unprofessional conduct "[c]ommitting a felony"), (*l*) ("[f]ailing to self-report a conviction for a felony or undesignated offense within ten days after the conviction"); A.A.C. R4-19-403(29) ("[f]ailing to notify the Board, in writing, of a conviction for a felony or an undesignated offense within 10 days of the conviction"). The evidence also supports the Board's determination that Fisher had engaged in unprofessional conduct by failing to protect confidential information, as the criminal charges arose because Fisher improperly obtained confidential patient records for his personal use in his employment grievance proceeding. *See* A.R.S. § 32-1601(26)(j); A.A.C. R4-19-401(C)(6) (stating a licensed practical nurse shall "[p]rotect confidential information unless obligated by law to disclose the information").

¶22　　Finally, Fisher argues at length in his appellate briefs that he engaged in a protected disclosure to his employer about unsafe patient care and that the employer's subsequent complaint about him to the Board, and the Board's disciplinary action, were in retaliation for that disclosure. The ALJ was entitled to reject Fisher's testimony, and we will not re-weigh the evidence. *See Shorey*, 238 Ariz. at 258, ¶ 14; *DeGroot*, 141 Ariz. at 335-36.

## CONCLUSION

¶23　　For the foregoing reasons, we affirm the superior court's order affirming the Board's decision to revoke Fisher's practical nurse license.

