IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

THOMAS HORNE, INDIVIDUALLY AND THOMAS HORNE FOR ATTORNEY
GENERAL COMMITTEE (SOS FILER ID 2010 00003); KATHLEEN WINN,
INDIVIDUALLY, AND BUSINESS LEADERS OF ARIZONA
(SOS FILER ID 2010 00375),
*Plaintiffs/Appellants,*

*v.*

SHEILA SULLIVAN POLK, YAVAPAI COUNTY ATTORNEY,
*Defendant/Appellee.*

No. CV-16-0052-PR
Filed May 25, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Crane McClennen, Judge
No. LC2014-000255
**VACATED**

Memorandum Decision of the
Court of Appeals, Division One
1 CA-CV 14-0837
Filed Feb. 23, 2016
**VACATED**

COUNSEL:

Dennis I. Wilenchik (argued), Wilenchik & Bartness, P.C., Phoenix, Attorneys for Thomas Horne and Tom Horne for Attorney General Committee; Timothy A. La Sota (argued), Timothy A. La Sota, PLC, Phoenix, Attorneys for Kathleen Winn and Business Leaders of Arizona

Sheila Sullivan Polk, Yavapai County Attorney, Benjamin D. Kreutzberg (argued), Deputy County Attorney, Prescott, Attorneys for Sheila Sullivan Polk

Dominic E. Draye, Solicitor General, Jennifer M. Perkins, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona Solicitor General

Paul V. Avelar, Timothy D. Keller, Keith E. Diggs, Institute for Justice, Tempe, Attorneys for Amicus Curiae Institute for Justice

_____

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE BRUTINEL, and JUDGES ECKERSTROM, HOWARD, and WRIGHT joined.*

_____

JUSTICE BOLICK, opinion of the Court:

¶1 In this case involving substantial consequences for alleged violations of campaign finance laws, we hold that due process does not permit the same individual to issue the initial decision finding violations and ordering remedies, participate personally in the prosecution of the case before an administrative law judge ("ALJ"), and then make the final agency decision that will receive only deferential judicial review.

## I.     BACKGROUND

¶2 On June 27, 2013, acting pursuant to A.R.S. § 16-924(A) (2011) *repealed by* 2016 Ariz. Sess. Laws, ch. 79, § 10 (2d Reg. Sess.), Arizona Secretary of State Ken Bennett determined that there was reasonable cause to believe that Attorney General Thomas Horne, Kathleen Winn, who served as Community Outreach Director of the Attorney General's Office, and two campaign committees (collectively "Appellants") had violated Arizona campaign finance laws, specifically A.R.S. §§ 16-901(14), -905, -913, -915, -917, and -919. The Secretary accordingly notified Solicitor General Robert L. Ellman, who appointed Sheila Polk as Special Arizona Attorney General because the Attorney General and one of his staffers were subjects of the notice, and "an appearance of impropriety would arise if the Arizona

_____

* Justices Ann A. Scott Timmer, Andrew W. Gould, and John R. Lopez IV have recused themselves from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Peter J. Eckerstrom, Chief Judge of the Arizona Court of Appeals, Division Two, the Honorable Joseph W. Howard, Judge of the Arizona Court of Appeals, Division Two, and the Honorable Timothy M. Wright, Judge of the Gila County Superior Court, were designated to sit in this matter.

Attorney General's Office investigated the alleged campaign finance violation."

¶3         Following investigation, pursuant to A.R.S. § 16-924(A), Polk issued a twenty-five-page order finding that Appellants had violated Arizona campaign finance statutes by illegally coordinating campaign expenditures, exceeding contribution limits, and collecting illegal contributions. Polk directed Appellants to amend their campaign finance reports and ordered Horne and his campaign to refund contributions totaling approximately $397,000. The order stated that if the Appellants failed to take the specified actions within twenty days, "this Office will issue an Order Assessing a Civil Penalty pursuant to A.R.S. § 16-924(B). The violation of the contribution limit carries a civil penalty of three times the amount of money of the violation. A.R.S. § 16-905(J)."

¶4         Appellants requested an administrative hearing pursuant to A.R.S. § 16-924(A). After a three-day evidentiary hearing, the ALJ issued a decision finding that Polk had failed to prove illegal coordination and recommending that Polk vacate her compliance order.

¶5         Pursuant to A.R.S. § 41-1092.08(B) (2000), Polk issued her final administrative decision, which rejected the ALJ recommendation and affirmed her prior compliance order. Polk accepted all of the ALJ's findings of fact and rejected in part the ALJ's conclusions of law.

¶6         Appellants appealed to the Maricopa County Superior Court, challenging Polk's decision and the constitutionality of Arizona's campaign contribution limits. Neither side requested an evidentiary hearing. The court affirmed Polk's decision, finding that substantial evidence supported it and rejecting challenges to the statutory scheme.

¶7         Appellants appealed to the court of appeals. Polk's answering brief acknowledged a fact previously unknown to Appellants: "Admittedly, the Yavapai County Attorney was involved with the prosecution of the case, by assisting with the preparation and strategy." Appellants argued that Polk's role as advocate and adjudicator violated their due process rights.

¶8         The court of appeals affirmed the superior court, concluding that "[b]ecause there was evidence in the record supporting Polk's finding

that Horne and Winn coordinated . . . , we find no abuse of discretion." *Horne v. Polk*, 1 CA-CV 14-0837, at *5 ¶ 12 (Ariz. App. Feb. 23, 2016). The court rejected Appellants' due process claim, relying on *Comeau v. Arizona State Board of Dental Examiners*, 196 Ariz. 102, 108 ¶ 26, 993 P.2d 1066, 1072 (App. 1999) ("An agency is permitted to combine some functions of investigation, prosecution, and adjudication unless actual bias or partiality is shown."). *Horne*, 1 CA-CV 14-0837, at *5–6 ¶ 13. The court concluded, "In this case, appellants make no showing of actual bias. Accordingly, their due process rights were not violated." *Id.* at *6 ¶ 13.

¶9　　　　We granted review of the due process issue, which is of statewide importance and likely to recur. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24. Because we consider only the constitutionality of the procedure under which Appellants' statutory violations were determined, our review is de novo. *Gallardo v. State*, 236 Ariz. 84, 87 ¶ 8, 336 P.3d 717, 720 (2014).

## II.　　DISCUSSION

### A. Statutory Scheme

¶10　　　　Arizona's Administrative Procedure Act ("APA"), title 41, chapter 6, is generally silent about how agency charges or complaints are initiated. In the context of campaign finance violations, § 16-924(A) prescribes that where there is "reasonable cause to believe that a person is violating any provision of this title" in connection with a statewide office, the "secretary of state shall notify the attorney general." The Attorney General, in turn, "may serve on the person an order requiring compliance with that provision. The order shall state with reasonable particularity the nature of the violation and shall require compliance within twenty days from the date of issuance of the order." *Id.*

¶11　　　　Section 16-924(A) further provides that the alleged violator has twenty days to request a hearing pursuant to the APA, for which administrative adjudication procedures are set forth in A.R.S. § 41-1092 *et seq.* Once the ALJ issues a decision, "the head of the agency, executive director, board or commission may review the decision and accept, reject or modify it." A.R.S. § 41-1092.08(B). Where an agency has a board or commission whose members are appointed by the governor, it "may review

4

the decision of the agency head . . . and make the final administrative decision." A.R.S. § 41-1092.08(C).

**¶12**      Ordinarily, nothing in the APA would necessitate having an agency head make both an initial and final legal determination. Here, the interplay between the campaign finance statute and the APA placed Polk in the position of issuing the initial order and then making the final determination. She also participated in the prosecution of the case before the ALJ. And under these circumstances, there was no board or commission to review Polk's final decision.[1]

**¶13**      An aggrieved party may appeal an adverse agency decision to the superior court, but the court's review is deferential. Section 12-910(E) provides that the court "shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." The court affirms the agency's factual findings if they are supported by substantial evidence, "even if the record also supports a different conclusion." *Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436 ¶ 11, 215 P.3d 1114, 1117 (App. 2009).

---

[1] Polk notes that the federal APA contains an exception allowing an agency head, unlike other employees, to both participate in investigative or prosecuting functions and participate or advise in the agency review or decision. 5 U.S.C. § 554(d). Arizona's APA contains no such exception. Arizona's APA tacitly recognizes the potential for conflict arising from agency officials performing certain multiple roles in the administrative adjudication process. Section 41-1092.06(B) provides that in the context of informal settlement conferences, the agency must be represented by "a person with the authority to act on behalf of the agency," and the "parties participating in the settlement conference shall waive their right to object to the participation of the agency representative in the final administrative decision."

## B. Due Process

**¶14**      Combining prosecutorial and adjudicative functions in the same agency official gives rise to due process concerns. A single agency may investigate, prosecute, and adjudicate cases, and an agency head may generally supervise agency staff who are involved in those functions. *See, e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 53 (1975) ("administrative agency [can] investigate facts, institute proceedings, and then make the necessary adjudications"). However, where an agency head makes an initial determination of a legal violation, participates materially in prosecuting the case, and makes the final agency decision, the combination of functions in a single official violates an individual's Fourteenth Amendment due process right to a neutral adjudication in appearance and reality. That due process violation is magnified where the agency's final determination is subject only to deferential review.[2]

**¶15**      The general parameters for due process are set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). There, the United States Supreme Court held that the constitutional sufficiency of administrative procedures is determined by three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] As Appellants did not raise or argue a distinct state constitutional claim, we have no occasion to determine whether the due process provision in Arizona's Declaration of Rights, Ariz. Const. art. 2, § 4, provides greater protection in this context than the Fourteenth Amendment. *Cf. Garris v. Governing Bd. of S.C. Reinsurance Facility*, 511 S.E.2d 48, 54 (S.C. 1998) (holding that the state constitution provides greater procedural protections in administrative proceedings than federal due process).

*Id.* at 335.

¶16  In this context, where the government seeks repayment of substantial campaign contributions that the private parties contend were legal (and, indeed, constitutionally protected), due process requires a neutral decisionmaker. Although Appellants have not alleged actual bias, once an official determines that a legal violation has occurred, that official can be expected to develop a will to win at subsequent levels of adjudication. At minimum, in the context of a regulatory agency adjudication, a process that involves the same official as both an advocate and the ultimate administrative decisionmaker creates an appearance of potential bias. *See, e.g.*, *Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 849 (Iowa 2009) ("[T]he primary purpose of separating prosecutorial from adjudicative functions" in an administrative agency "is to screen the decisionmaker from those who have a 'will to win.'"). On the other hand, barring an agency head who makes an ultimate decision from having even general supervisory authority over agency employees involved in the prosecution of a case would unduly hamper agency operations. Due process will be satisfied if the agency head who serves as the ultimate adjudicator does not also serve in an advocacy role in the agency proceedings.

¶17  The right to a neutral adjudicator has long been recognized as a component of a fair process. One cannot both participate in a case (for instance, as a prosecutor) and then decide the case. Blackstone observed that a judge must not rule in a cause in which he is a party, "because it is unreasonable that any man should determine his own quarrel." *Am. Gen. Ins. Co. v. Fed. Trade Comm'n*, 589 F.2d 462, 463 (9th Cir. 1979) (quoting Blackstone, *Commentaries on the Laws of England*, I, 91). In *In re Murchison*, 349 U.S. 133, 136 (1955), the United States Supreme Court recognized the due process principle that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Murchison* entailed a "one-man grand jury," in which a judge acting as a grand jury charged two witnesses with perjury and then convicted them, which the Court held violated due process. *Id.* at 133–34. Because the judge was "part of the accusatory process," he "cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." *Id.* at 137. "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Id.* at 136; *accord Marshall v. Jerricho, Inc.*, 446 U.S.

238, 243 (1980) ("[J]ustice must satisfy the appearance of justice, and this stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." (internal citation and quotation marks omitted)). The process was impermissibly tainted by the judge performing both prosecution and adjudication functions.

¶18      The Court in *Withrow*, 421 U.S. at 46, applied those principles to the administrative context. There, a state licensing board notified a physician that it would commence an investigative proceeding to consider possible violations of his medical license. *Id.* at 37–39. The physician challenged the board's combined investigatory and adjudicatory functions as a due process violation. *Id.* at 39. The Court noted that although "situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," the "contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden," given "the presumption of honesty and integrity." *Id.* at 47.

¶19      The Court distinguished *Murchison* on the basis that there "the judge in effect became part of the prosecution and assumed an adversary position," and observed that *Murchison* did not stand for the "broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications." *Id.* at 53. The Court noted that an "initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes," thus the same agency may perform both functions. *Id.* at 58. However, the Court cautioned, "[t]hat the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." *Id.*

¶20      Here, the combination of prosecutorial and adjudicative functions not just in a single agency but in the same official presents "special facts and circumstances" creating an intolerable risk of unfairness. The initial determination of a legal violation here was not akin to a judge finding probable cause to proceed to trial and then reaching a final decision

after an adversarial process in which the judge was not an advocate. Rather, under the statutory scheme, the Secretary of State made the probable cause finding. Polk then commenced investigation and issued a lengthy decision finding a legal violation and ordering compliance, which would have been a final determination had Appellants not appealed. In the subsequent ALJ proceeding, Polk admittedly "was involved with the prosecution of the case, by assisting with the preparation and strategy." Thereafter, she issued a final administrative determination affirming her prior order and rejecting most of the ALJ's conclusions of law. So we have here not only a single agency performing accusatory, advocacy, and adjudicatory functions, but the same individual performing all three functions. As *Withrow* characterized the circumstances in *Murchison*, "the judge in effect became part of the prosecution and assumed an adversary position." *Withrow*, 421 U.S. at 53. Beyond even that, Polk was in the position to affirm the very determination and order that she initially issued. *See also id.* (describing denial of due process where judge could rely on his own "[personal] knowledge and impression . . . that could not be tested by adequate cross-examination" (internal quotation marks omitted)).

**¶21**      Other decisions further inform our analysis. *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993), pertains to pension plans, but its reasoning applies here. The federal statutory scheme entailed an adjudication of withdrawal liability by pension trustees, who have a fiduciary duty to the integrity of the pension plans, but the Court concluded that sufficient safeguards were present to ensure due process. *Id.* at 619–20. The initial liability determination was made by the trustees, who "act only in an enforcement capacity," *id.* at 619, and whose decision was reviewed by a neutral arbitrator applying a preponderance of the evidence standard. *Id.* at 611. "Where an initial determination is made by a party acting in an enforcement capacity," the Court ruled, "due process may be satisfied by providing for a neutral adjudicator to conduct a *de novo* review of all factual and legal issues." *Id.* at 618 (internal quotation marks omitted). By contrast, "[c]learly, if the initial view of the facts based on the evidence derived from nonadversarial processes as a practical or legal matter foreclosed fair and effective consideration at a subsequent adversary hearing leading to ultimate decision, a substantial due process question would be raised." *Withrow*, 421 U.S. at 58.

**¶22**       Here the initial determination was subject to de novo review by the ALJ, but the ALJ's determination was not final.  Rather, the initial decisionmaker returned to make the final decision.  "Even appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator."  *Concrete Pipe*, 508 U.S. at 618.  The superior court review available from the final agency decision here falls far short of that.

**¶23**       More recently, in *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1908–09 (2016), the Court found a defendant's due process rights were violated when a prosecutor who approved the decision to seek the death penalty later served as a supreme court justice in a habeas petition arising from the same crime.  "Of particular relevance to the instant case, the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case."  *Id.* at 1905.  Where "a prosecutor who participates in a major adversary decision" or "a judge has served as an advocate for the State in the very case the court is now asked to adjudicate," a serious question arises concerning whether the adjudicator, despite best efforts, could untether from his or her previous position and render a fair judgment.  *Id.* at 1906.  Here, the fact that Polk "had a direct, personal role in the [Appellants'] prosecution," *id.*, likewise violates due process.

**¶24**       The reasoning of the *Williams* dissenters also supports our conclusion.  Chief Justice Roberts distinguished the basis for the due process violation in *Murchison*, where "the judge (sitting as grand jury) accused the witnesses of contempt, and then (sitting as judge) presided over their trial on that charge."  *Id.* at 1913 (Roberts, C.J., dissenting).  In *Williams*, by contrast, it was "abundantly clear" that the justice "had *not* made up his mind about either the contested evidence or the legal issues under review," because he had not "previously made any decision with respect to that evidence in his role as prosecutor."  *Id.* at 1914.  Likewise, Justice Thomas observed in *Williams* that "[b]roadly speaking, *Murchison*'s rule constitutionalizes the early American statutes requiring disqualification when a single person acts as both counsel and judge in a single civil or criminal proceeding."  *Id.* at 1920 (Thomas, J., dissenting).  He emphasized that a due process violation occurs only where the "same person . . . act[s] as counsel and adjudicator in *the same case*."  *Id.* at 1919 (highlighting the separation between the original decision to approve the request to seek the death penalty and the current civil proceeding regarding timeliness of a stay action).  In this case, Polk made her views on the evidence and legal

issues very clear in her initial twenty-five-page order, and she subsequently affirmed that very order in the same case after participating in the prosecution.

¶25        These cases instruct that the combination of accusatory, advocacy, and adjudicative roles in a single agency official violates due process.  Other courts have followed that instruction.  Synthesizing the cases as we have, the Iowa Supreme Court held in *Botsko* that the conduct of the civil rights commission's director in advocating on behalf of the complainant and then participating in the commission's closed adjudicatory proceeding violated due process.  774 N.W.2d at 849–50. Therein, the court articulated the applicable constitutional boundaries. Applying *Withrow*, it concluded that "there is no due process violation based *solely* upon the overlapping investigatory and adjudicatory roles of agency actors."  *Id.* at 849.  "A more serious problem, however, is posed where the same person within an agency performs both *prosecutorial* and *adjudicative* roles."  *Id.*; *see also Am. Gen.*, 589 F.2d at 464–65 (the order "is infected with invalidity" because a commissioner participated as counsel in earlier proceedings, even though that participation may have been "superficial rather than substantial"); *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 254 F.2d 90, 91 (D.C. Cir. 1958) ("The fundamental requirements of fairness . . . require at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case."); *Nightlife Partners, Ltd. v. City of Beverly Hills*, 133 Cal. Rptr. 2d 234, 248 (Cal. Ct. App. 2003) (observing that combination of investigatory and adjudicatory functions is "fraught" with problems, especially where "these dual functions were not held by different sections of a single office, but by a *single individual*").

¶26        Arizona jurisprudence is consistent with those authorities.  In *Comeau*, a doctor retained by the board investigated the complaint, then made statements and asked questions before the administrative panel, but "was not on the panel and did not participate in the discussion that preceded the panel's findings and recommendations."  196 Ariz. at 108 ¶ 27, 993 P.2d at 1072.  In *Rouse v. Scottsdale Unified School District No. 48*, 156 Ariz. 369, 371, 752 P.2d 22, 24 (App. 1987), the court stated that "[t]he precise question in this case is whether simply joining investigative/prosecutorial and adjudicative functions results in a partial decision maker.  We hold that it does not."  To the extent that these functions are combined in a single

agency, we agree that the potential for bias is not intolerable; if they are performed by the same individual, they violate due process. *Cf. Taylor v. Ariz. Law Enf. Merit Syst. Council,* 152 Ariz. 200, 206, 731 P.2d 95, 101 (App. 1986) ("A conflict of interest would clearly arise if the same assistant attorney general participated as an advocate before the council and simultaneously served as an advisor to the council in the same matter."). In *Rouse*, the termination decision at issue was initiated by the staff, not the board that rendered the final decision; and "the board, at the time of the hearing, had little more than 'mere familiarity with the facts.'" 156 Ariz. at 373, 752 P.2d at 26. Under such circumstances, the defendant still had a neutral adjudicator.

¶27 We hold that due process does not allow the same person to serve as an accuser, advocate, and final decisionmaker in an agency adjudication. This holding should not unnecessarily impede the efficient and effective functioning of administrative agencies. As noted, in most instances, agencies are free under Arizona law to generate their own processes regarding initiation, investigation, and prosecution of charges or complaints. The agency head may supervise personnel involved in such functions; but if she makes the final agency decision, she must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion. *See, e.g., Lyness v. Pa. State Bd. of Med.,* 605 A.2d 1204, 1209, 1211 (Pa. 1992) ("if more than one function is reposed in a single administrative entity, walls of division [must] be constructed which eliminate the threat or appearance of bias"; specifically, "placing the prosecutorial functions in a group of individuals, or entity, distinct from the Board which renders the ultimate adjudication").

¶28 Although Appellants do not allege actual bias, the circumstances here deprived them of due process. Apparently unique in the context of Arizona administrative law, Arizona's campaign finance statute, when joined with the APA, place a single official in the position of making both an initial and final determination of legal violation, with no opportunity for de novo review by the trial court. A quasi-judicial proceeding "must be attended, not only with every element of fairness but with the very appearance of complete fairness." *Amos Treat & Co. v. Sec. & Exch. Comm'n,* 306 F.2d 260, 266–67 (D.C. Cir. 1962) (holding that a similar combination of functions violated the "basic requirement of due process"). Specifically, we hold that when Polk also assumed an advocacy

role during the ALJ proceedings, the due process guarantee prohibited her from then serving as the final adjudicator.

### III.    REMEDY

**¶29**        Appellants argue that because there was no "valid" decision by the agency head within thirty days after the ALJ decision, we should reinstate the ALJ decision as the "final administrative decision" pursuant to A.R.S. § 41-1092.08(D) ("if the head of the agency . . . does not accept, reject or modify the administrative law judge's decision within thirty days," it becomes "the final administrative decision").  We disagree.  The agency head took action within the deadline.

**¶30**        Rather, Appellants are entitled to a determination by a neutral decisionmaker.  *See Williams*, 136 S. Ct. at 1910; *Botsko*, 774 N.W.2d at 853; *Nightlife Partners*, 133 Cal. Rptr. 2d at 248–49.  We therefore remand the matter to the current Attorney General's Office, which does not have a conflict, for a final administrative decision.  We express no opinion on the merits of the case.

**¶31**        After filing their petition for review, Appellants submitted an amended request for attorney fees under A.R.S. § 12-348(A)(2), which allows an award of fees for a party that "prevails by an adjudication on the merits" in a "court proceeding to review a state agency decision."  Because the case is remanded, any fee award would be premature as no party has yet "prevail[ed] by an adjudication on the merits."  *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Syst. Admin.*, 206 Ariz. 1, 8 ¶ 29, 75 P.3d 91, 98 (2003) (alteration in original).

**¶32**        For the foregoing reasons, we vacate the decisions of the superior court and court of appeals, and remand the case to the Attorney General's Office for further proceedings consistent with this opinion.