IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

───────────

**LEGACY FOUNDATION ACTION FUND,**
*Plaintiff/Appellant,*


*v.*


**CITIZENS CLEAN ELECTIONS COMMISSION,**
*Defendant/Appellee.*

───────────

No. CV-22-0041-PR
**Filed March 2, 2023**

───────────

Appeal from the Superior Court in Maricopa County
The Honorable Christopher T. Whitten, Judge
Nos. CV2018-004532, CV2018-006031
(Consolidated)

**REVERSED AND REMANDED WITH INSTRUCTIONS**

───────────

Opinion of the Court of Appeals, Division One
252 Ariz. 499 (App. 2022)

**VACATED**

───────────

COUNSEL:

Brian M. Bergin, Bergin, Frakes, Smalley & Oberholtzer, PLLC, Phoenix;
Brennan Bowen, Holtzman Vogel Baran Torchinsky & Josefiak PLLC,
Phoenix; Jason B. Torchinsky, Shawn Sheehy (argued), Holtzman Vogel
Baran Torchinsky & Josefiak PLLC, Haymarket, VA, Attorneys for Legacy
Foundation Action Fund

Mary R. O'Grady, Joseph N. Roth (argued), John S. Bullock, Osborn
Maledon, P.A., Phoenix, Attorneys for Citizens Clean Elections
Commission

Timothy Sandefur, John Thorpe, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Kristin K. Mayes, Arizona Attorney General, Alexander W. Samuels, Principal Deputy Solicitor General, Kara M. Karlson, Joshua Whitaker, Assistant Attorneys General, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

Aditya Dynar, Pacific Legal Foundation, Arlington, VA, Attorneys for Amicus Curiae Pacific Legal Foundation

———————————

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, JUSTICES BOLICK, BEENE, MONTGOMERY, and PELANDER (Ret.) joined. [*]

———————————

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        For the second time, we address issues stemming from a 2014 election-related dispute between the Clean Elections Commission (the "Commission") and Legacy Foundation Action Fund ("Legacy"). *See Legacy Found. Action Fund. v. Citizens Clean Elections Comm'n (Legacy I)*, 243 Ariz. 404 (2018). Because Legacy failed to timely appeal the Commission's final administrative decision assessing a penalty for Legacy's violation of the Citizens Clean Elections Act (the "Act"), we previously held the superior court lacked appellate jurisdiction to decide whether the Commission acted within its subject matter jurisdiction. *Id.* at 408 ¶ 19. We now consider whether the superior court can adjudicate that issue in a collateral proceeding.

_____

[*] Justice Lopez and Justice King have recused themselves from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

**¶2** We hold the superior court can adjudicate Legacy's challenge to the Commission's subject matter jurisdiction in a collateral proceeding because a judgment entered by a tribunal lacking subject matter jurisdiction is void. Also, we hold that issue preclusion does not apply under the circumstances here because the Commission did not serve as a neutral decisionmaker in deciding its own jurisdiction, thereby depriving Legacy of a full and fair adjudication of the issue.

## BACKGROUND

**¶3** This matter has ping-ponged between the Commission and the courts. It commenced when an attorney for former Mesa Mayor Scott Smith's gubernatorial campaign filed a complaint with the Commission on July 1, 2014, alleging Legacy violated the Act by funding advertisements expressly advocating against Mayor Smith without properly registering and filing statutorily required campaign finance reports. *See* A.R.S. §§ 16-914.02 (repealed 2016), -941(D), -958(A)–(B).[1] The complaint also alleged that gubernatorial candidate Doug Ducey, his campaign committees, and others coordinated with Legacy for these advertisements, triggering unfulfilled in-kind contribution reporting requirements. The Commission is the state agency charged with enforcing the Act. A.R.S. § 16-956(A)(7).

**¶4** On July 16, Legacy responded to the complaint arguing the Commission lacked subject matter jurisdiction and, regardless, the complained-of advertisements did not constitute "express advocacy." Two days later, Legacy filed a lawsuit in superior court challenging the Commission's jurisdiction. (The court dismissed the action on September 23 for reasons not appearing in our record.) The Ducey campaign also asserted the Commission lacked jurisdiction to investigate questions involving contributions to candidates not participating in clean election funding.

---

[1] Throughout this opinion, we cite statutes in effect in 2014. The legislature has since amended some of those provisions. We also take judicial notice of the Commission's record of proceedings in MUR 14-007, which contains transcripts and documents referred to, but not attached, as exhibits in the appellate record here. *See, e.g., Jarvis v. State Land Dep't City of Tucson*, 104 Ariz. 527, 530 (1969) (taking judicial notice of an administrative agency's records).

3

**¶5**      On July 28, spurred to act by Legacy's lawsuit and two other pending lawsuits concerning what constitutes "express advocacy" and whether the Commission has jurisdiction when non-participating candidates engage in express advocacy, Thomas Collins, the Commission's executive director, recommended that the Commission immediately decide it possessed jurisdiction and that Legacy's advertisements constituted express advocacy. *See* Ariz. Admin. Code R2-20-206(A) (authorizing the executive director to make recommendations). Legacy filed a supplemental response opposing the recommendation and then appeared at a public Commission meeting held July 31, where Collins presented his recommendation and Legacy's and the Ducey campaign's attorneys argued against it. After the Commission members questioned Collins and the attorneys, the commissioners met in executive session with their own attorney and then voted in public session that the Commission possessed jurisdiction to consider the complaint.[2] The commissioners did not decide whether Legacy had engaged in express advocacy.

**¶6**      On September 9, Collins filed a statement explaining why reason existed to believe Legacy had violated the Act and recommending action.[3] Collins and Legacy argued the matter at a September 11 public meeting, and the commissioners voted to find that reason existed to believe Legacy had violated the Act and to authorize an investigation. In a September 26 compliance order, the Commission formally notified Legacy of that decision and required that Legacy comply with the Act within fourteen days, provide an explanation for not doing so, or enter into a public administrative settlement with the Commission. *See* A.R.S. § 16-957(A) (authorizing these procedures if the Commission finds "reason to believe" that a person violated the Act). The Commission also ordered Legacy to answer written questions under oath concerning its spending in Arizona. *See* § 16-956(B) (authorizing such questions).

**¶7**      Legacy filed a response on October 14, again arguing that the Commission lacked subject matter jurisdiction and that the advertisements fell outside the Act. At a November 20 public meeting, Collins informed

---

[2]   The transcript reflects that the Commission would receive legal advice during any executive session and that the "public" left the room during executive session. It is unclear whether Collins was also present during the executive session or removed himself as a member of "the public."

[3]   On Collins' recommendation, the Commission dismissed the complaint against the Ducey campaign on August 21 for lack of evidence.

the commissioners that Mayor Smith's attorney had withdrawn the complaint and asked that the Commission refrain from further action. After meeting in executive session with their attorney, the commissioners refused the request. They variously commented the Commission had already asserted jurisdiction by investigating the complaint; the commissioners had a duty to "remedy any violation that [they] perceive"; the commissioners were there "to uphold the public interest in enforcing the [Act]" and not Mayor Smith's "private interest"; and once an investigation occurs, "[un]like [in] a court action," the complainant has no authority to withdraw a complaint as the matter is then one "brought by the Commission."

¶8        Thereafter, Collins recommended the Commission find probable cause that Legacy had violated the Act and assess a monetary penalty. Legacy's attorney then argued Legacy's advertisements were not "express advocacy," again argued the Commission lacked subject matter jurisdiction, and that, in any case, the statutory penalty provision was inapplicable to Legacy because it was not acting on behalf of a candidate. *See* A.R.S. § 16-942(B). The commissioners again found the Commission had jurisdiction, concluded probable cause existed Legacy had violated the Act by failing to comply with reporting statutes, and assessed a penalty of about $95,000. The Commission entered an order to this effect on November 28, additionally finding that Legacy had violated the statutory reporting requirements. *See* § 16-957(B) (authorizing the Commission to assess a penalty if it "finds that the alleged violator remains out of compliance" with the Act after the fourteen-day period).

¶9        Legacy appealed and requested an administrative hearing, challenging, among other things, the Commission's subject matter jurisdiction. Through their attorneys, Legacy and the Commission participated in a hearing on January 28, 2015. Thereafter, an administrative law judge ("ALJ") from the office of administrative hearings rejected Legacy's assertion that the Commission had exceeded its authority to enforce the Act. But he ultimately ruled the Commission had failed in its burden to show Legacy had engaged in express advocacy and was therefore subject to the Act's reporting requirements. He additionally concluded that even if Legacy had violated the Act, the Commission's order was defective for failing to make any candidate on whose behalf the expenditure was made jointly and severally responsible. The ALJ therefore sustained Legacy's appeal and rescinded the civil penalty.

¶10 The Commission's attorney, who had previously advised the commissioners during the proceedings and represented the Commission before the ALJ, moved the Commission to reject the ALJ's disposition and instead affirm the November 28, 2014 Commission order.[4] After Legacy opposed the motion, the Commission issued a final administrative order in the form proposed by the Commission's attorney, which made additional findings of fact, accepted the ALJ's findings of fact and some of his conclusions of law, but rejected his conclusions that Legacy had not engaged in express advocacy and that the Commission's order was otherwise defective. Consequently, the Commission affirmed the November 28, 2014 order finding a violation and assessing a penalty. *See* A.R.S. § 41-1092.08(B) (authorizing an agency to accept, reject, or modify an ALJ's decision).

¶11 Legacy appealed the Commission's order to the superior court, arguing, among other things, the Commission lacked subject matter jurisdiction because the advertisements did not constitute express advocacy. *See Legacy I*, 243 Ariz. at 405 ¶ 4. The Secretary of State sought to intervene, claiming the Commission had usurped her authority to enforce independent expenditure statutes.

¶12 The superior court dismissed the appeal as untimely. *Id.* Both the court of appeals and this Court subsequently agreed the appeal was untimely, thereby depriving the superior court of jurisdiction to consider Legacy's challenge. *Id.* at 408 ¶ 19. We did not address whether Legacy could collaterally attack the Commission's decision. *Id.* ("We express no view on whether Legacy may pursue alternative procedural means to challenge the Commission's penalty order as void.").

¶13 Legacy next filed a special action complaint in the superior court challenging the Commission's subject matter jurisdiction, and the Commission simultaneously sued to enforce payment of its penalty. *Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 252 Ariz. 499, 502 ¶ 5 (App. 2022). After consolidating the cases, the superior court ultimately granted the Commission's motion to dismiss the special action complaint and entered summary judgment in favor of the Commission on its complaint. *Id.* ¶ 6. The court permitted the collateral challenge but

---

[4] The motion stated that "[a]n attorney who did not previously represent or advise the Commission on this matter [would] provide the Commission independent advice" regarding the motion.

applied issue preclusion to reject two bases for Legacy's claim that the Commission lacked subject matter jurisdiction. It rejected a third basis on the merits.

¶14 In a split decision, the court of appeals affirmed but for a different reason. *Id.* at 501 ¶ 2. The majority adopted the Restatement (Second) of Judgments § 12 (Am. L. Inst. 1982) and held Legacy was precluded from collaterally attacking the Commission's final administrative order on jurisdictional grounds. *Legacy Found. Action Fund*, 252 Ariz. at 504 ¶ 15. The dissenting judge disagreed, reasoning Restatement § 12 is inconsistent with Arizona law, which provides that a tribunal's subject matter jurisdiction is always subject to challenge. *Id.* at 507 ¶ 35, 508 ¶ 41 (Bailey, J., dissenting). She further concluded that neither issue preclusion nor claim preclusion applies to shield an agency order from a collateral challenge if the agency lacked subject matter jurisdiction. *Id.* at 508 ¶¶ 37–38.

¶15 Whether to follow Restatement § 12 in deciding if an agency's subject matter jurisdiction can be challenged in a collateral proceeding and identifying the circumstances in which issue preclusion applies to agency determinations present recurring legal issues of statewide importance. We therefore granted review. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶16 We review a summary judgment and a judgment resulting from a motion to dismiss de novo. *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 10 (2021) (summary judgment); *Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 420 ¶ 10 (2022) (motion to dismiss). Similarly, we review de novo as issues of law whether to adopt the Restatement § 12 and whether issue preclusion applies. *See Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 111 ¶ 15, 112 ¶ 18 (2017) (Restatement application); *Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266 ¶ 8 (2022) (issue preclusion).

### A. Restatement § 12

¶17 Restatement § 12 curtails the circumstances in which a party may collaterally attack an adjudicative tribunal's subject matter jurisdiction:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
>
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Thus, under Restatement § 12, once a final judgment is entered, parties are ordinarily precluded from challenging the tribunal's subject matter jurisdiction in collateral litigation, regardless of whether the parties litigated subject matter jurisdiction in the original proceeding. *See* Restatement § 12 cmt. d.

**¶18** We generally follow Restatement principles when they reflect sound legal policy and no contrary controlling authority exists. *In re Sky Harbor Hotel Props., LLC*, 246 Ariz. 531, 533 ¶ 6 (2019). Here, we agree with the court of appeals' dissent that Restatement § 12 is inconsistent with controlling Arizona authority, and the majority therefore erred by adopting the provision. *See Legacy Found. Action Fund*, 252 Ariz. at 507 ¶ 32.

**¶19** For more than a century Arizona courts have recognized that a judgment is "void upon its face" and has no legal effect if the issuing court lacked subject matter jurisdiction, making the judgment "subject to attack at any time," including in a collateral proceeding. *Shinn v. Ariz. Bd. of Exec. Clemency*, 521 P.3d 997, 1004 ¶ 27 (Ariz. 2022) (quoting *Hughes v. Indus. Comm'n*, 69 Ariz. 193, 197 (1949)); *see also Chaparro v. Shinn*, 248 Ariz. 138, 142–43 ¶ 22 (2020); *Walker v. Davies*, 113 Ariz. 233, 235 (1976); *Henderson v. Towle*, 23 Ariz. 377, 383 (1922); *Tube City Min. & Mill. Co. v. Otterson*, 16 Ariz.

305, 310 (1914). Final administrative orders are similarly void if the agency lacked subject matter jurisdiction, rendering them vulnerable to collateral attack. *See Tucson Warehouse & Transfer Co., Inc. v. Al's Transfer, Inc.*, 77 Ariz. 323, 325 (1954) ("[A] decision of [an agency] which goes beyond its power as prescribed by the Constitution and statutes is vulnerable for lack of jurisdiction and may be questioned in a collateral proceeding."); *Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 76 Ariz. 373, 377 (1954) (stating that the corporation commission decision could not be collaterally attacked unless the commission lacked jurisdiction or power to make the decision); *see also* A.R.S. § 12-902(B) (barring judicial review of an administrative decision outside a direct appeal "except for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter"). Thus, unlike Restatement § 12, Arizona law generally permits collateral challenges to a final administrative decision to contest the tribunal's subject matter jurisdiction.

**¶20** Contrary to the court of appeals' opinion, this authority applies even if a party had already raised a jurisdictional challenge before entry of the contested judgment. *See Legacy Found. Action Fund*, 252 Ariz. at 504 ¶ 15. This Court's decision in *Moeur v. Ashfork Livestock Co.*, 48 Ariz. 298 (1936), although addressing the propriety of a mandamus action, is instructive. There, the state land commissioner awarded a land lease to a livestock company (Ashfork) and rejected a competing application from another (Fritsche). *Id.* at 299–300. Fritsche appealed to the state land department but failed to serve Ashfork with notice as statutorily required. *Id.* at 300. Ashfork appeared at the appeal hearing and moved to dismiss the matter. *Id.* It argued that because Fritsche's appeal was procedurally defective, the commissioner's decision had become final, and the state land department therefore lacked subject matter jurisdiction to overturn it. *Id.* The department denied the motion and ultimately awarded the lease to Fritsche. *Id.* Although Ashfork was statutorily entitled to appeal to the superior court, it instead filed a new mandamus lawsuit that resulted in the court directing the department to issue the lease to Ashfork. *Id.* at 300–01.

**¶21** On appeal, this Court rejected Fritsche's argument that mandamus was improper because Ashfork had a plain, speedy, and adequate remedy by way of appealing the state land department's decision. *Id.* at 302, 304–05. The Court reasoned that an appeal was neither adequate nor proper because any appeal from the department's decision might have ignored Ashfork's rights as established in the commissioner's decision, which had become final due to the absence of a proper appeal.

*Id.* at 304. Significantly, the Court recognized that "[a] judgment rendered without jurisdiction is a nullity and the party against whom it is entered may ignore it and proceed as though no attempt had ever been made to render it." *Id.* This reasoning is equally applicable when considering whether to foreclose a collateral challenge to a void judgment based on a tribunal's lack of subject matter jurisdiction.

**¶22** In sum, we do not adopt Restatement § 12. Judgments entered by tribunals lacking subject matter jurisdiction are subject to challenge in collateral proceedings. *See Shinn*, 521 P.3d at 1004 ¶ 27.

### B. Issue preclusion

**¶23** Our rejection of Restatement § 12 does not resolve this matter. Because Legacy unsuccessfully challenged the Commission's subject matter jurisdiction during the administrative proceedings, we must decide whether issue preclusion (collateral estoppel) applies to uphold the superior court's judgment. The superior court ruled that because the Commission had determined it possessed jurisdiction, and Legacy failed to timely appeal, the Commission's decision was final and "created issue preclusion." Consequently, the court ruled it was bound by the Commission's jurisdictional findings.

**¶24** Issue preclusion is a judicial doctrine that prevents a party from relitigating issues of fact or law. *Arizona v. California*, 530 U.S. 392, 414 (2000); *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986). The doctrine protects litigants from needlessly relitigating settled issues and promotes judicial economy. *Crosby-Garbotz v. Fell ex rel. Cnty. of Pima*, 246 Ariz. 54, 57 ¶ 10 (2019). For a party to successfully assert issue preclusion as an affirmative defense, *see Lakin Cattle Co. v. Engelthaler*, 101 Ariz. 282, 284 (1966), it must show that (1) the issue at stake is the same in both proceedings; (2) the issue was actually litigated and determined in a valid and final judgment issued by a tribunal with competent jurisdiction; (3) the opposing party had a full and fair opportunity to litigate the issue and actually did so; and (4) the issue was essential to the judgment. *See Chaney Bldg. Co.*, 148 Ariz. at 573; *King v. Superior Court*, 138 Ariz. 147, 150 (1983); *Corbett v. ManorCare of Am., Inc.*, 213 Ariz. 618, 624 ¶ 16 (App. 2006); Restatement § 27.

**¶25** Legacy argues that because issue preclusion applies only to "valid" final judgments issued by courts or tribunals possessing "competent jurisdiction," the superior court must independently decide whether the Commission possessed subject matter jurisdiction without giving preclusive effect to the Commission's determination of that issue. *See Legacy Found. Action Fund*, 252 Ariz. at 508 ¶ 38 (Bailey, J., dissenting) ("The requirements of a 'valid' decision and a 'court of competent jurisdiction' mean that a court must have subject-matter jurisdiction over a dispute before its ruling may acquire preclusive effect."). We disagree.

**¶26** An agency is authorized to determine its own jurisdiction. *See Ross v. Ariz. State Pers. Bd.*, 185 Ariz. 430, 432 (App. 1995). When it "make[s] specific adjudications as to jurisdiction over the person or over the subject matter," these determinations are generally "subject only to direct and not collateral attack by parties to the action." *Martin v. Indus. Comm'n*, 4 Ariz. App. 547, 549–50 (1967); *see also Lofts v. Superior Court*, 140 Ariz. 407, 410 (1984) ("When the rendering court in a *contested* hearing determines it has jurisdiction, its determination is *res judicata* on the jurisdictional issue and cannot be relitigated in another state."). Thus, because the Commission determined it had subject matter jurisdiction, if the circumstances justifying issue preclusion apply, the superior court correctly applied the doctrine in finding subject matter jurisdiction.

**¶27** Legacy next argues issue preclusion does not apply here because subject matter jurisdiction was not actually litigated and decided in the Commission proceedings. Legacy's argument rests on its premise that an issue is actually litigated only if an appellate court addresses it. Because the superior court in the administrative proceedings dismissed Legacy's appeal as untimely, Legacy asserts jurisdiction was not actually litigated. Again, we disagree. An administrative decision becomes final for purposes of issue preclusion when those proceedings conclude, even absent an appeal. *Guertin v. Pinal Cnty.*, 178 Ariz. 610, 612 (1994) ("A party's failure to appeal a final administrative decision makes that decision final and res judicata."); *see also Ariz. Downs v. Superior Court*, 128 Ariz. 73, 76 (1981) ("In order for res judicata or collateral estoppel to be applicable there must be a final judgment.").

**¶28** Legacy finally argues that the superior court violated Legacy's due process rights by invoking issue preclusion because the Commission was not neutral in determining its own jurisdiction, thereby depriving Legacy of a full and fair adjudication of the issue. *See Ferris v.*

*Hawkins*, 135 Ariz. 329, 331 (App. 1983) (stating that issue preclusion does not apply when "there is some overriding consideration of fairness to a litigant, which the circumstances of the particular case would dictate" (quoting *Di Orio v. City of Scottsdale*, 2 Ariz. App. 329, 332 (1965))). Amicus Goldwater Institute originally raised this issue, prompting this Court to address it at oral argument and then invite relevant briefing from the parties and interested amici. We do not ordinarily address arguments raised solely by amicus. *See Protect Our Ariz. v. Fontes*, 522 P.3d 678, 683–84 ¶ 13 n.4 (Ariz. 2023). We exercise our discretion to do so here because the issue is one of constitutional dimension and statewide importance, and "the public interest is better served by having the issue considered rather than deferred." *Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482 (1986).

**¶29** In *Horne v. Polk*, 242 Ariz. 226 (2017), we addressed the consequences of permitting a non-neutral decisionmaker to issue a final decision. There, the Secretary of State determined reasonable cause existed to believe the Attorney General and others (collectively, "Attorney General") had violated campaign finance laws. *Id*. at 228 ¶ 2. Sheila Polk, the Yavapai County Attorney, served as a special attorney general to investigate the alleged violations. *Id*. Polk found that the Attorney General had violated the law and directed him to amend his campaign finance reports and refund $397,000 in contributions. *Id* ¶ 3. The Attorney General requested and received an administrative hearing. *Id*. at 229 ¶ 4. At its conclusion, the ALJ found that Polk had failed to prove any violations and recommended she vacate the compliance order. *Id*. Polk disagreed and issued a final decision accepting the ALJ's findings of fact and some conclusions of law but affirming her prior order. *Id*. ¶ 5. In a subsequent appeal, the superior court affirmed Polk's decision because substantial evidence supported it, and a challenge to the campaign finance laws was not well-taken. *Id*. ¶ 6. The court of appeals affirmed. *Id*. ¶ 8.

**¶30** This Court vacated the prior courts' decisions, concluding that "due process does not permit the same individual to issue the initial decision finding violations and ordering remedies, participate personally in the prosecution of the case before an [ALJ], and then make the final agency decision that [would] receive only deferential judicial review." *Id*. at 228 ¶ 1. After noting that a single agency may generally investigate, prosecute, and adjudicate cases, we concluded "the combination of functions in a single official violates an individual's Fourteenth Amendment due process right to a neutral adjudication in appearance and reality." *Id*. at 230 ¶ 14.

**¶31**　　　　　Here, unlike in *Horne*, one person did not serve as prosecutor and final adjudicator. But for two reasons, that distinction does not cast the Commission as a neutral decisionmaker in deciding the breadth of its own subject matter jurisdiction under the circumstances here.

**¶32**　　　　　First, at the time the Commission initially ruled that it had subject matter jurisdiction, it was motivated to do so, at least partly, by two pending lawsuits concerning the meaning of "express advocacy" and whether the Commission possessed jurisdiction to investigate questions concerning campaign contributions to non-participating candidates. *See Doug Ducey Candidate Campaign Comm. & Legacy Found. Action Fund*, MUR 14-007, at 16 (Ariz. Citizens Clean Elections Comm'n July 28, 2014) (Recommendation on Jurisdiction & Express Advocacy Communication) ("Given that one of those cases is pending an opinion from the court of appeals and the other will be fully briefed in the Superior Court by next week, I recommend the Commission acknowledge that the advertisement is express advocacy and that the Commission has jurisdiction over the Complaint."). The Commission was a party in one case, *Horne v. Ariz. Citizens Clean Elections Comm'n*, No. CV 2014-009404, at 1 (Maricopa Cnty. Super. Ct. Oct. 31, 2014), and had filed an amicus brief in the other, *Comm. for Just. & Fairness v. Ariz. Sec'y of State's Off.*, 235 Ariz. 347, 347 (App. 2014). Thus, when deciding the Commission had subject matter jurisdiction to consider the complaint against Legacy, the commissioners had an interest in taking a position consistent with those taken by the Commission in pending lawsuits.

**¶33**　　　　　Second, although advised by Collins and their attorney, the commissioners themselves made all enforcement decisions and then adjudicated the case. Specifically, they found reason existed to believe Legacy had violated the Act; authorized an investigation; ordered Legacy to comply with the Act and answer written questions under oath verifying its spending in Arizona; found probable cause that Legacy had violated the Act; found that Legacy had violated the Act; assessed a penalty; and issued the final administrative order rejecting the ALJ's recommendation and affirming their prior order, which had found a violation of the Act and assessed a penalty.

**¶34**　　　　　The commissioners' advocacy role is further evidenced by their decision to continue with the matter after Mayor Smith's attorney withdrew the complaint and asked them to stop proceedings, and their statements they had a duty to "remedy any violation that [they] perceive";

13

that the commissioners' job was "to uphold the public interest in enforcing the [Act]" and not Mayor Smith's "private interest"; and that once an investigation occurs, the matter is one "brought by the Commission." Effectively, the commissioners acted as a party to the dispute, casting considerable doubt on their ability to fairly and objectively decide whether the Commission possessed jurisdiction. *See Horne*, 242 Ariz. at 231 ¶ 17 (observing "it is unreasonable that any man should determine his own quarrel" (citing *Am. Gen. Ins. Co. v. Fed. Trade Comm'n*, 589 F.2d 462, 463 (9th Cir. 1979))).

**¶35** Like Polk in *Horne*, the commissioners here served as both prosecutor and final decisionmaker, thereby depriving Legacy of its due process right to have subject matter jurisdiction adjudicated by a neutral decisionmaker. *See id.* at 230–31 ¶ 16 (reasoning "once an official determines that a legal violation has occurred, that official can be expected to develop a will to win at subsequent levels of adjudication" and cannot be considered a neutral decisionmaker in accordance with due process). Although the ALJ was a neutral decisionmaker who reviewed the commissioners' initial decision, his ruling was not binding, and the commissioners lawfully rejected it in their final decision. *See* § 41-1092.08(B). Thus, the ALJ's participation did not provide Legacy with the neutrality demanded by due process. *See Horne*, 242 Ariz. at 232 ¶ 22 (giving no weight to ALJ proceedings in similar circumstances).

**¶36** Likewise, the availability of an appeal to the superior court did not cure the due process violation because the court would have deferentially reviewed the Commission's non-neutral findings of fact pertinent to its subject matter jurisdiction. *See* A.R.S. § 12-910(E) (amended 2017) ("The court shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion."); *see also Horne*, 242 Ariz. at 230 ¶ 14 (noting the "due process violation is magnified where the agency's final determination is subject only to deferential review").

**¶37** The Commission could have avoided this circumstance by having only Commission employees serve in the prosecutorial role and confining the commissioners' role to be the ultimate decisionmaker. *See Horne*, 242 Ariz. at 231 ¶ 16 ("[B]arring an agency head who makes an ultimate decision from having even general supervisory authority over

agency employees involved in the prosecution of a case would unduly hamper agency operations. Due process will be satisfied if the agency head who serves as the ultimate adjudicator does not also serve in an advocacy role in the agency proceedings."). And when serving in that role, those employees (or counsel) should not also serve in an advisory role for the commissioners. Due process requires an agency to separate prosecutorial and adjudicative functions. *See id.* at 234 ¶ 27 (stating that agency heads "must be isolated from advocacy functions and strategic prosecutorial decisionmaking and must supervise personnel involved in those functions in an arms-length fashion"). We recognize that the Act and the Arizona Administrative Procedures Act together empowered the Commission to both initially and finally determine that the Act has been violated without de novo review by a neutral decisionmaker. *See* §§ 12-910(E); 16-957. Nevertheless, the Commission must carefully carry out these functions in a manner that complies with due process for its decision to carry preclusive effect. That did not occur here.

## CONCLUSION

¶38 For the foregoing reasons, we vacate the court of appeals' opinion, reverse the superior court's judgment, and remand to that court to determine whether the Commission had subject matter jurisdiction without giving preclusive effect to the final administrative decision. We deny Legacy's request for attorney fees pursuant to A.R.S. § 12-348 without prejudice to seeking those fees from the superior court should it ultimately prevail.