NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

GIOVANNY ESCOBEDO, *Petitioner/Appellant*,

*v.*

MARKIE MILLER, *Respondent/Appellee*.

No. 1 CA-CV 25-0530 FC

FILED 04-06-2026

Appeal from the Superior Court in Maricopa County
No. FC2015-092922
The Honorable David E. McDowell, Judge

**VACATED AND REMANDED**

COUNSEL

Giovanny Escobedo, Mesa
*Petitioner/Appellant*

Al Arpad Esquire, Phoenix
By Alexander R. Arpad
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Vice Chief Judge David D. Weinzweig joined.

_____

**F A B I A N**, Judge:

¶1         Giovanny Escobedo ("Father") appeals from the superior court's denial of his motions to set aside child support arrearages owed to Markie Miller ("Mother") contained in the court's amended child support order. Father argues the court denied him due process by entering the arrears judgment without an evidentiary hearing. This Court vacates and remands.

### FACTUAL AND PROCEDURAL HISTORY

¶2         In 2015, Father petitioned to establish legal decision-making and parenting time for the parties' minor child. The parties agreed, in a temporary agreement adopted by the superior court, that Father "continue to directly pay to Mother the monthly sum of $300.00 as and for child support." The parties later agreed that after February 1, 2016, the child support obligation would decrease to $100 per month because they had shifted to an equal parenting time schedule. The court adopted this agreement as well. After mediation in 2019, the parties agreed to modify parenting time, but Father's child support obligation remained at $100 per month.

¶3         In December 2023, Mother filed a motion for temporary orders and a petition to modify legal decision-making, parenting time, and child support, alleging Father committed an act of domestic violence against Father's then partner. Mother sought sole legal decision-making, limited supervised parenting time for Father, and child support under the Arizona Child Support Guidelines. Mother did not seek child support arrearages in the petition or any time thereafter.

¶4         That same month, the superior court issued temporary orders awarding Mother temporary legal decision-making, limiting Father's parenting time to four hours per week, and ordering Father pay Mother

$731 per month in child support pursuant to the Arizona Child Support Guidelines.

¶5          At an evidentiary hearing in May 2024, Mother testified that she was no longer splitting childcare costs with Father. Father testified that he was underpaying the support amount ordered in the court's temporary orders by approximately $30 per month.

¶6          The superior court ruled on Mother's petition on May 20, 2024. The court awarded Mother sole legal decision-making, implemented a parenting time schedule that gradually increased Father's parenting time over a period of several months, and ordered Father pay Mother $559 per month in child support. The court also stated:

> [T]he Court believes there may be a child support arrearage owed by [Father] to [Mother]. Therefore, the Court will order a child support arrearage calculation. . . .
>
> No arrearage judgment is entered as part of this Ruling because the Court does not have information at this time about any arrearage owed between the date of this Petition and the final hearing.

¶7          In December 2024, the superior court filed a pending case status report where the Division of Child Support Services ("DCSS") calculated Father's total arrears to be $12,789.12 including interest. In February 2025, the court, without an evidentiary hearing, entered an amended child support order, which included an arrearage judgment awarding Mother $12,789.12 and adding $158 to Father's monthly child support payment to be put towards the arrearage judgment.

¶8          Father then filed a motion to set aside the arrearage judgment based on waiver, detrimental reliance, and unreasonable delay in enforcement. Treating the motion as one under Rule 85, *see* Ariz. R. Fam. Law P. 85, the court denied it, relying in large part on its conclusion that Father's affirmative defenses should have been raised in response to Mother's petition or other pretrial filings.

¶9          Father then filed another Rule 85 motion to set aside or reduce the arrearage judgment and requested an evidentiary hearing, arguing he was unaware at the initial evidentiary hearing that arrears were being pursued and was thus denied the opportunity to present his defenses. The court denied the second Rule 85 motion in May 2025, stating the court had already addressed the merits of his arguments in ruling on the previous

motion and the second motion "does not address any of the defects with his legal theories."

**¶10**     Father filed a notice of appeal for the denials of both Rule 85 motions but not the amended child support order. This Court has jurisdiction over Father's timely appeal under Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 2101(A)(2).

## DISCUSSION

### I.     Father Was Denied Due Process.

**¶11**     Father argues he was denied due process when the superior court entered the arrears judgment based on the DCSS calculation without an evidentiary hearing.

**¶12**     This Court reviews the denial of a Rule 85 motion for an abuse of discretion. *Duckstein v. Wolf*, 230 Ariz. 227, 231 ¶ 8 (App. 2012). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion . . . or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50 ¶ 27 (App. 2007) (quoting *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982)).

**¶13**     "No person shall be deprived of life, liberty, or property without due process of law." Ariz. Const. art. II, § 4; *see also* U.S. Const. amend. XIV, § 1. "The elements of procedural due process are notice and an opportunity to be heard." *Iphaar v. Indus. Comm'n*, 171 Ariz. 423, 426 (App. 1992). "The type of notice that due process requires is that which is reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Id.*

**¶14**     Rule of Family Law Procedure 91(b) describes the required notice.  It provides that "[a]n applicant who seeks to modify or enforce all or a portion of a judgment after the entry of the judgment must file a petition with the court." "A petition to enforce an order to pay spousal maintenance, child support, or other sums that are due under a support order must . . . include a current summary calculation of arrears derived from support payment clearinghouse records, if available, or if not available, a statement of all sums due." Ariz. R. Fam. Law P. 91.2(a).

**¶15**     Here, Mother did not file a petition to enforce an order to pay child support. Mother's petition sought only to modify legal decision-

4

making, parenting time, and child support. It did not include a current summary calculation of arrears or a statement of all sums due. Similarly, Mother's pretrial notice of issues and pretrial statement do not mention child support arrearages or any intention to enforce payment of past due child support. Therefore, Father was only on notice that Mother was seeking increased child support calculated by the Arizona Child Support Guidelines, not previously unpaid child support. By ordering Father to pay arrearages predating Mother's 2023 petition, the superior court expanded the scope of relief outside of the issues presented in Mother's petition, and in doing so violated Father's due process rights. *See Savord v. Morton*, 235 Ariz. 256, 259–60 ¶¶ 16-18 (App. 2014).

**¶16** Mother argues that Father cannot challenge the issue of arrears because that issue was finally decided in the superior court's 2024 order and Father did not appeal from that order. But when the court issued its May 2024 order, it ordered a child support arrearage calculation—not an arrearage judgment—because it "does not have information at this time about any arrearage owed between the date of this Petition and the final hearing." Thus, the court's order contemplated only post-petition arrearages as a result of the court's temporary child support order, arrearages which Mother could properly seek to be included in the final order. *See Valencia v. Valencia*, 1 CA-CV 19-0224 FC, at *2 ¶ 11 (Ariz. App. Mar. 31, 2020) (mem. decision) ("To prevent a debtor-parent from simply not paying and 'running out the clock' on the temporary support order . . . the court need only include any temporary support arrearages in the final decree. The creditor-parent can also object to or otherwise seek relief from a decree that fails to include the arrearages.").

**¶17** Father does not dispute that he is obligated to pay post-petition arrearages on the temporary child support orders. He testified in his own presentation that he was underpaying Mother for the temporary child support obligation. Father neither appealed the superior court's May 2024 order, which ordered that he pay post-petition arrearages upon calculation of the amount by DCSS, nor raised the issue in his Rule 85 motions following the 2025 amended order. Thus, on remand, the superior court should determine arrearages for the post-petition amount.

## II. Attorney Fees on Appeal.

**¶18** Mother requests her attorney fees on appeal pursuant to A.R.S. § 25-324. In its discretion, this Court denies her request.

## CONCLUSION

**¶19**	The superior court's orders are vacated. The case is remanded to the superior court for an evidentiary hearing to determine the amount of arrearages accrued after Mother's petition was filed and to enter an arrearage judgment on that amount.

